### EARLE v. POAT

1. Public Road—Alleyway—Evidence—Hearsay.—Where title in plaintiff is admitted in suit for damages for defendant's tearing down a fence across an alleyway, statement by previous owner of what grantor said as to the use of the alleyway is hearsay.

2. Verdict.—Motion to direct a verdict properly refused, because there was testimony enough to go to jury to say whether the use of the way was by the consent of the owner or adverse to his right.

3. Request.—If part of a request is unsound, Judge may properly refuse all of it.

4. Charge—Public Road—Alleyway—Presumption—Dedication.— Requests to charge what acts could not be held as a presumption of

dedication of alleyway to public, properly refused, because they would have been charging on the facts.

5. PUBLIC ROAD—ALLEYWAY—ADVERSE USE.—The assertion by the general public of the right to use a public way for twenty years for public purposes, carries with it an adverse use by the public.

MR. JUSTICE JONES *dissents.*

Before GAGE, J., Richland, spring term, 1901.   Affirmed.

Action by John J. Earle against C. J. Poat.   From judgment for defendant, plaintiff appeals.

*Mr. Wm. H. Lyles,* for appellant, cites : *Error to rule out statement to Earle's grantor as to use of way:* Elliott on Roads and Streets, 2 ed., secs. 156, 165, 166. *Public alley cannot be created without dedication, express or implied:* 2 Strob., 66 ; Elliott on Roads and Streets, 2 ed., secs. 169, 167, 178. *There must be an adverse use:* Elliott on Roads and Streets, 2 ed., secs. 5, 162, 175, 92 ; 110 Ind., 509 ; 1 McC., 67 ; 112 Mass., 349 ; 66 Me., 254 ; 6 Wait's Act. and Def., 304, 305, 307, 308, 313, 355 ; 10 L. R. A., 675 ; 2 Dil. Mun. Corp., sec. 606 ; 51 Md., 609 ; 110 Ind., 513 ; 22 L. R. A., 740 ; 1 Bail., 56, 341 ; Dud., 92 ; Cheves, 1 ; 41 S. C., 1 ; 34 S. C., 299, 450 ; 39 S. C., 25 ; 54 S. C., 294.

*Mr. R. W. Shand,* contra, cites : *Charge must be construed with reference to facts of case:* 61 S. C., 425 ; 40 S. C., 234 ; 1 Dana, 363. *Declarations of former grantor cannot affect rights previously acquired:* 26 S. C., 231 ; 29 S. C., 293. As *to rights by prescription:* 3 Kent., 506, 541 ; 2 Bl. Com., *263 ; 7 Connyn. Dig., 96 ; Cheves, 3 ; 7 Rich., 393 ; 128 Mass., 65. *Difference between presumption and prescription:* Elliott on Roads and Streets, 134, 135. *The fee in lands subject to an easement is property and taxable:* Rev. Stat., 217, 271 ; 4 Rich., 68 ; 5 Rich. Eq., 76 ; McM. Eq., 294. *Use for twenty years of a road connecting two highways, or of an alley connecting two streets, raises a presumption of dedication or condemnation:* 1 McM., 47 ; 2 Strob., 65 ; 7 Rich., 390 ; 11 S. C., 368 ; 39 S. C., 25 ; 12

Rich., 407; 1 Bail., 58, 342; Cheves, 1; 2 Hill, *642; 1 McM., 330; 41 S. C., 1; 53 S. C., 503; Elliott R. & S., 1 ed., 117, 118; Wash. Ease., 199-202; 23 Pa. St., 212; 26 Pa. St., 189; 19 Pick., 514; 39 S. C., 25; 55 S. C., 299.

April 15, 1902.  The opinion of the Court was delivered by

MR. JUSTICE POPE.  On the 16th February, 1900, this action was commenced.  It is admitted that the title to an alleyway in the city of Columbia is owned by the plaintiff, which alleyway is about twelve feet wide, extending the whole depth of plaintiff's lot, to wit: 267 feet, and that said alleyway runs through from Main street to Sumter street. Defendant while admitting that the fee to said alleyway for twelve feet in width and to 267 feet in depth is in plaintiff in fee simple, contends that he and the public generally have acquired a right to use the same, not by license, but by right; said alleyway having "been so used continuously and adversely for a period of time whereof the memory of man runneth not to the contrary; and has been for many years, certainly for more than fifty years last past, recognized as a public alleyway or street of the city of Columbia, and so used to the knowledge of plaintiff, his predecessors and grantors. That this defendant is the owner of premises abutting on the said alleyway, on the southern side thereof, and he purchased these premises with said alleyway so open and used, and by reason thereof without any claim of plaintiff to close the same."  The defendant also admits that on the 6th day of February, 1900, he did tear down and remove from said alleyway a fence, the plaintiff on the same day had erected across said alleyway.  On these issues the cause came on to be tried before his Honor, Judge Gage, and a jury.  The verdict was for the defendant.

And now the plaintiff, after judgment, appeals to this Court.  In his grounds of appeal he insists that the Circuit Judge erred in refusing to admit certain testimony; also erred in refusing to direct a verdict for plaintiff, with

nominal costs; also erred in refusing to charge certain requests of the plaintiff; and also erred in charging certain requests of the defendant.

We will reproduce the text of these exceptions as follows:

"1. Because his Honor refused, upon objection of the defendant, to allow the witness, F. S. Earle, offered on behalf of the plaintiff, to reply to the question, 'What did Mrs. Heinitsh tell you?' the same being with reference to her rights in the alley and her purpose in allowing the use thereof by the public.

"2. Because his Honor refused plaintiff's motion to instruct the jury, at the close of the case, to find a verdict for the plaintiff, with nominal damages.

"3. Because his Honor refused plaintiff's first request to charge, 'That a public alley cannot be created without a dedication, express or implied, by the owner of the land over which it passes.'

"4. Because his Honor refused plaintiff's third request to charge, 'That when the owner of land across which there is an alleyway, used by the public, continues to claim the ownership of it by paying taxes on it and conveying it as private property, he cannot be held by presumption to have dedicated it to the public.'

"5. Because his Honor refused plaintiff's fifth request to charge, that 'The right of the public to use an alley cannot be established by adverse user alone in analogy to the statute of limitations, and the jury can presume a dedication to the public only by such user as indicates the purpose of the owner to dedicate it to the public.'

"6. Because, upon request of the defendant, his Honor charged the jury as follows, to wit: 'If the public at large, the people of Columbia, have used this alley to pass from Main street to Sumter street and from Sumter street to Main street, in this city, for any twenty years continuously and uninterruptedly next before the commencement of this action, a grant to the public of such use by the owners of the soil will be presumed;' thereby erring in indicating, first, that mere

user by the public would be sufficient to establish the right of the public to use the same; and second, by indicating that the law would absolutely presume a grant to the public.

"7. Because his Honor charged the jury as follows, to wit: 'Twenty years or more of use by the public of a way in the same place continuously gives the public the right to go that way by prescription;' thereby indicating that even if such user was with the acquiescence of the landowner and accompanied by his use of the same for his own purposes, that the absolute right of user would be established by prescription.

"8. Because his Honor charged the jury as follows, to wit: 'The issue is whether all of Columbia and all of the public have for twenty years continuously passed and repassed along this way leading from Main street to Sumter street;' thereby indicating that even if the alley had been left open for the convenience of the plaintiff and those who owned the lot over which the same passes and the public had been allowed to use the same, merely because their user was not inconsistent with use thereof by the owner and those under whom he claims, without any intention on his or their part to dedicate the same, that such user would settle the issue in favor of the defendant.

"9. Because his Honor charged the jury as follows, to wit: 'I charge you, if you conclude that this is a way leading from Main street back to Sumter street, and if the public has heretofore traveled that unmolested for twenty years continuously in one place leading from one highway to another highway, then I charge you the public has acquired by long user the right to use, to travel it;' thereby indicating, first, that it was not necessary for defendant to show that user of the alley by the public for twenty years had been adverse in its character; second, further indicating that it was not necessary to show that the user was of such a character as to indicate an acknowledgment on the part of the plaintiff, or those under whom he claims, of the right of the public to use the same; third, thereby indicating that even if the user

was by the acquiescence of the plaintiff and those under whom he claims, because not inconsistent with his or their own private use of the alley, it would still establish the right of the public to use the same."

We will now consider the *first* exception. When the plaintiff's witness, Dr. F. S. Earle, was on the stand, he was asked the question, "What did Mrs. Heinitsh tell you?" Just preceding this question, Dr. Earle had stated, "When I bought the property, I thought I was buying the alley; I bought the property from Mrs. Heinitsh. I made the agreement with her." Then the question was asked, "What representations were made by her to you as to the ownership of that alley?" This is the question to which the answer of the witness would have been made, if the objection of defendant had not been sustained by the Circuit Judge. Considerable latitude has been allowed along this line both in England and in America—especially where the boundary lines are concerned—as will fully appear by the cases of *Sexton* v. *Hollis*, 26 S. C., 235 and 236; *Taylor* v. *Glenn,* 29 S. C., 295 and 296; and cases cited in each of these cases. But this is no case where boundaries form any part of the issues to be tried. Indeed, the title in the plaintiff as to the alleyway is admitted. So, therefore, what Mrs. Heinitsh told Dr. Earle as to the use of the alleyway was clearly incompetent as "hearsay." In addition to this, Mrs. Heinitsh was examined in this cause as one of plaintiff's witnesses. This exception is overruled.

2. We think and so hold, that the Circuit Judge committed no error when, at the close of the whole testimony, he refused to grant the motion of plaintiff, that he (the Circuit Judge) should direct the jury to render a verdict for the plaintiff, with nominal damages. This is what occurred in that connection: "Mr. Lyles: I am going to ask your Honor to instruct the jury to find for the plaintiff, with nominal damages. We now make that motion—that your Honor instruct the jury to find for the plaintiff, with nominal damages—upon the ground that it is ad-

mitted that we are the owners of the property in question, and the affirmative defense is set up that this has become a public alley.    The only proof of it is the proof of user, which is perfectly consistent with the right of owners to use an alley—their dominion over it.    It is shown it was kept open all the time for their convenience, and that mere use of it by the public cannot ripen into the right, no matter how long continued.    Not a tittle of evidence here that there has been any recognition of that right by the owners of the property; on the contrary, there is considerable testimony that they had repeatedly asserted their right to close it up by putting a bar or something of the kind across it; that the gate was knocked down by Poat, the chief of police or anybody else, does not alter the relation."    To this the Circuit Judge replied : "I cannot direct a verdict at the close of the testimony. Plaintiff's counsel moved for a direction of the verdict for the plaintiff, with nominal damages, upon the ground that the testimony of defendant failed to disclose, or did not tend to prove, that the use testified to by defendant's witnesses of the alley was adverse to the owners of the fee, and, therefore, did not establish the right in the public or in the defendant to use the alley.    It would not be proper for me to comment on the testimony even at this stage, and it is not necessary now to hold that the testimony must establish the adverse use.    I think, though, from the testimony, there is enough to go to the jury, even to say whether or not the use testified to by the parties was with the consent of the owner, or was it adverse to the right of the owner.    Upon that ground I cannot direct the verdict."    We think, as before stated, that the Circuit Judge was not in error.    Indeed, we regard the statement of the grounds upon which he based his ruling as conclusive.    This exception is, therefore, overruled.

3. We will next consider the refusals of the Circuit Judge to charge the requests of plaintiff.   While the Circuit Judge refused to grant this request in the form in which it was presented, yet in the body of his charge he substantially responded thereto.    It will be remembered that there

was *no testimony* submitted at the trial which referred to or alleged a *formal dedication* by the owner of this alleyway to the use of the public; so that, strictly speaking, when the plaintiff started to ask the Circuit Judge to charge upon a dedication—express as well as implied dedication—he may have mingled a good proposition with one which was irrelevant to the issues. It is well established that an appellant must stand or fall upon his request in its entirety; and if part is unsound, the Circuit Judge is justified in a refusal to charge the request as thus presented. This exception is overruled.

4. His Honor, the Circuit Judge, very properly refused to charge the fourth request of plaintiff, for the reason that such a charge involved a charge upon the facts. This exception is overruled.

5. This fifth request of plaintiff is faulty, in that if the Circuit Judge had so charged, he would have invaded the province of the jury, by charging upon the facts. This exception is overruled.

We propose to consider the matters involved in the sixth, seventh, eighth and ninth exceptions in a group. In order to do this fairly, we will produce his Honor's charge in this cause in its entirety:

"This is an action by J. J. Earle, called the plaintiff, against C. J. Poat, called the defendant. John J. Earle alleges that he owns a lot of land on Main street, betwixt Taylor and Blanding streets, of certain dimensions—thirty-nine feet, I believe—which dimensions include also an alley, or open way, about twelve feet wide, lying betwixt his place and the place of the defendant, C. J. Poat. Mr. Earle's allegation is that the land belongs to him, or, in the language of the law, that the fee of the land is in him, and he says that Poat, as the owner of the adjoining piece of property, knocked down an obstruction which he put in that alley, and which he had the right to put there, because it was his own alley. Here is the allegation of the complaint that refers to that alley. Earle says in his complaint, alleges in his com-

plaint, that the alley was left open and has been used for the convenience of the owners and tenants of the plaintiff's lot. He admits the alley is there, but is there for his own purpose.

"Now, what is the allegation of the answer? Mr. Poat, not by his pleading, but by his counsel in Court, admits that the fee of the land is in Earle, but that it is subject to an easement—that is, that the public have the right to go over it; that is called a way. He alleges that in almost this language, that there is an alley twelve feet (says Poat in his answer) betwixt his lot and Earle's, running from Main street to Sumter street, used as of right and not by license, by the landowners on both sides of the alley and by the public generally, and so used continuously and adversely for a period of time whereof the memory of man runneth not to the contrary, and has been for more than fifty years last past, recognized as a public street, and so used to the knowledge of Earle and those under whom he claims.

"Now, what is the issue for you? The issue for you is as to whether or not the public have acquired by user for a sufficient length of time, the right to pass and repass that alley from Main street to Sumter street. That is the issue for you. And now upon that line, gentlemen, both sides request me to charge.

"The plaintiff's first request I cannot grant; the second request I can grant in this language: 'That when the owner of land allows the public to use an alleyway across his land, but has made no express dedication of it to the public, no dedication can be presumed, when the owner occasionally places bars across it.'

"The third I cannot grant. The fourth I modify. It is in this language: 'That a mere user of a private alley by the public, which is not inconsistent with the use of it by the owners, cannot of itself ripen into a right on the part of the public to use it'—that is correct; and I add this language: 'but it is for the jury to say if the alley in question is a private or a public way.'

"The fifth request I cannot grant.

"The defendant makes these requests : 'First. The grant of a street, alley or other thoroughfare in a city may be accepted by formal action of the city council, or by the assumption by the city of control over it, or by the public using it;' and I add : 'continuously for twenty years or more.' That is correct.

" 'Second. If the public at large—the people of Columbia —have used this alleyway (sometimes called Heinitsh alley) to pass from Main street to Sumter street, and from Sumter street to Main street, in this city, for any twenty years continuously and uninterruptedly'—next before the commencement of this action—'a grant to the public of such use by the owners of the soil *will* be presumed.' That is correct.

" 'Third. Where the public have acquired the use of an alleyway in a city, no acts of occasional trespass thereafter will affect the rights of the public to its continued use.' That is correct.

" 'If the jury find that this Heinitsh alley was a thoroughfare of the city of Columbia which the public had a right to use, then any obstruction to its free use put there by any person after such alley became a thoroughfare, was a nuisance which any other citizen had a legal right to remove.' Correct.

"Now, briefly, in my own language. As I said to start with, this is an action for damages by Earle against Poat, because it is alleged Poat knocked down an obstruction which Earle had the right to put upon his own land. And Poat alleges, while the land is Earle's, the great public, and he is part of the public, had the right to go over it; in other words, had a way. It is not necessary for me to define what a way is, because you know. It does not involve the ownership of land, but it involves the right to go over land; in the language of the law, it is an easement. One man may own the land, but another man may have the right to go over it.

"Well, how are ways acquired? The public has the right under the terms of the Constitution to condemn ways for public purposes; so that the public may acquire the right to

go over a man's land by condemnation proceedings—that is, empanel a jury, fix a price upon it, lay it out, claim it, pay for it, whether he wants to or not. That is by condemnation. The public may acquire the right in another way: A man may set it aside for the public—that is called dedication; as if he had set it aside by word of mouth, or by deed signed with his name, or by act. If a man has a block of land, lays it out in lots, lays off a street through them, having the purpose to dedicate this street to the use of the public, that is called a dedication; that involves the purpose on the part of the man who has the land, who owns the title to it. That is another way. Now, there is a third way. The third way is called by prescription—that is to say, the public acquires the right to go over the land by long practice, by long use; twenty years or more of use by the public of a way, in the same place continuously, gives the public the right to go that way by prescription.

"Now, then, what sort of ways are there, gentlemen? As one of the counsel told you, there are three sort of ways: First, a public highway, called a public highway, not so much because the public use it, but because the public maintains it, keeps it in repair at public expense; a public highway, on the roll of the county, or on the roll of the city, maintained, kept up and worked by the public. Then there is the second, I shall denote as a public way (if I give you the other definition it will confuse you)—I will simply call it a public way. That way is called public, not because the public works it, because the public might not work it, it may not be on the books; it is called public because the public uses it, not because every man uses it, or many men, but because every man has the right to travel it. And thirdly, a private way. A private way is where one or two individuals or families have the right to travel it, but the public has not the right. Now, what sort of way does Poat claim this is? You heard his counsel; he claims that it was a public way, that of the second class, not a public highway, and not a private way, but a public way—that is, a way on which all the

public have the right to travel, if they want to travel it. Therefore, gentlemen, this is a contest not so much between Poat and Earle as between the public and Earle—Poat claiming to be one of the great public, and claiming the right to travel this road as other people in Columbia claim the right to travel it.

"Now, then, what is the issue? The issue is whether all of Columbia and all the public have for twenty years continuously passed and repassed along this way leading from Main street to Sumter street? Now, the point of controversy between counsel is—right here I am going to make it sharp and decisive, so if right or wrong, it may be determined hereafter: It is contended by counsel for Earle that the public must use this way, running from Sumter street to Richardson street, twenty years, and must do more than that, they must use it twenty years continuously, and must use it adversely to Earle—that is, in derogation of Earle's right, denying Earle's right and asserting their own right by acts, words, and must do that for twenty years. That is their contention. The contention of the other side is, it is sufficient if the public used that road in the same place twenty years continuously, and if they did, that gives them the right. I charge you that is my view of the law. I charge you that is my view of the law, not so much because my original view, but because it seems to be the law laid down by our Court, State *v.* Floyd, and affirmed by our Supreme Court. This language was used: "The right to a neighborhood road'—which I called a public road—'the right to a neighborhood road'—or, as I shall put it, 'the right to a public road'—which is the same thing—'may be established by proving twenty years use over that same place.' The Supreme Court affirmed that. I charge it so plainly and explicitly, that, if I am right, there may be no question about it hereafter; and if I am wrong, there may be no question about it hereafter. Unfortunately, the law has not been built in a day. It has not been laid by fine architecture at the beginning and built by skilful workmen in a day; but it

has been laid day by day by workmen after workmen, a piece put on here and a piece put on there as the needs of society required it, as new conditions arose. For that reason all its parts sometimes seem not to be in harmony; but the law I cite to you is the law as I understand it to be declared by our Court, and for this case you must take it. Therefore, I charge you, if you conclude that this is a way leading from Main street back to Sumter street, and if the public has heretofore traveled that unmolested for twenty years continuously in one place, leading from one highway to another highway, then I charge you, the public has acquired by long user the right to use, to travel it; and if you so conclude, find a verdict for the defendant; if you conclude otherwise, find a verdict for plaintiff. So the form of your verdict will be, if you find for the plaintiff, say we find for the plaintiff so many dollars or cents. The object of this action is to contest a right. It is a friendly suit between two citizens to contest a right. If you find for the plaintiff, say we find for the plaintiff so many dollars damages or it may be one dollar damages; if you find for the defendant, say we find for the defendant; and sign your name as foreman. Take the record and find a verdict."

"The jury thereupon retired and shortly afterwards returned with the following verdict, to wit: 'We find for the defendant.' "

This observation may be made in every instance that a charge of the Circuit Judge is being reviewed—that such charge must always be construed with reference to the facts of each particular case. The remarks of the respondent's attorney in this connection are well put, when he says: "This Court, referring to one of its previous decisions, said in Roberson v. McCauley, 61 S. C., 425: 'Of course, the language used by a Judge in delivering the opinion of the Court must always be construed with reference to the facts of the case which he is considering.' For the same reasons the same construction is given to a charge to the jury. 'The well settled rule is that the charge of a

Circuit Judge must be understood as applying to the case as made by the evidence.' *State* v. *Morrow,* 40 S. C., 234. And this doctrine is not peculiar to South Carolina. *Million* v. *Riley,* 1 Dana, 363." The salient facts, which were uncontradicted, were that the fee in this alleyway had been for many years in the plaintiff, and before him in those from whom he derived his title. That this alleyway had been used by the public undisturbed for more than sixty years; that in case any obstructions were ever placed across said alleyway, they were always torn down at once. That in 1867, the mayor ordered the chief of police, Mr. Sam. Green, to remove them. That the alleyway was sometimes worked upon by the city employees. That said alleyway was used by foot passengers and by vehicles of different kinds. That when the buildings on each side of the alleyway were burned, in the year 1865, by Sherman and his followers, the buildings were rebuilt and the original alleyway still preserved. That there were at least three other public alleyways in the city, leading from Main street to Assembly street. That no witness who was examined at this trial testified that this alleyway was not used by the public. That no witness testified as to when and how this alleyway was first established. *Under such circumstances* it was that the Circuit Judge made his rulings in these exceptions complained of. Bringing himself down to the point at issue, the Circuit Judge charged the jury: "Therefore, I charge you, if you conclude that this is a way leading from Main street back to Sumter street, and if the public has hitherto traveled that unmolested for twenty years continuously in one place, leading from one highway to another highway, then I charge you the public has acquired by long user the right to use to travel it; and if you so conclude, find a verdict for the defendant; if you conclude otherwise, find a verdict for the plaintiff." At one time I feared the Circuit Judge had failed to give enough force to the term "adverse" use by the public; but it now seems to me that the word *"unmolested,"* as used in this charge, is about tantamount to the

idea of an adverse use, especially when the word unmolested is used in connection with the words *"continuously* for twenty years.": If the testimony had made an issue that the use by the public was in the memory of man begun originally by the permission of the owner of this alleyway, then I could see the necessity for an adverse use by the public. But there is no pretense of such a state of affairs in the case at bar. Such being the circumstances of this cause, as before remarked, I see no necessity for any other qualification to the language of the Circuit Judge. In the very case referred to by the Circuit Judge, in his charge to the jury, the case of the *State* v. *Floyd*, 39 S. C., at page 25, this Court said: "He (Judge Wallace) said that the 'nomenclature of the different kinds of roads was unfortunate, as the jury are not apt to draw the distinction between "private paths" and "private ways." A private path is a neighborhood road; a private way is an individual right. A private way requires stronger proof to establish the right than a neighborhood road, because the right to a neighborhood road may be established by proving twenty years use over that same place; but a private way is acquired not by twenty years use only but in addition to that by some assertion of an adverse right—a right as against the owner of the soil to travel in that direction. Now, we have in this case to deal with a neighborhood road. When the right to a neighborhood road has been acquired, either by dedication or by the consent of the owners, and accepted by the public, which is signified by using it—when that is acquired, then neither the owners of the soil or any one else can obstruct it, without violating the criminal laws of the State.'" This Court, in regard to this language of Judge Wallace, said: "We see no error in this. It seems to be precisely in accord with what was said by Judge O'Neall, in the case of the *State* v. *Sartor*, 2 Strob., 66, viz: 'The true test is in the general use by all persons for the public purposes for an uninterrupted period of twenty years or more.' In one respect I think there is a great difference as to the evidence from which a dedication to a public

use may be presumed, and prescription for a private way. In the latter, no such right can arise in woodland, without some unequivocal right of adverse right, such as cutting out the road and repairing it." By referring to the case of the State *v.* Sartor, *supra,* it will be seen, on page 66, that Judge O'Neall uses this language: "The two first, highways and private paths, may arise either from express enactment, or by being laid out by some lawful authority, or *by a user for twenty years* or more. Many of the great roads in South Carolina began in the Indian trails or paths, and I think it would be difficult to find acts of the legislature or orders of the county courts or commissioners of roads directing them to be laid out. The true test is in the *general use by all persons, for public purposes, for an uninterrupted period of twenty years or more* * * * In the case of a public way, every man holds his land subject to the right of the State to lay out roads over it for public purposes. This being so, if the way be found to exist long enough to presume a dedication, the right to regard it as public, if its other characteristics be found, is made out" (italics mine). From these authorities it would seem that the Circuit Judge need not have particularized by using the word "adverse," for we hold that the assertion by the general public of the right to use a public way for twenty years for public purposes, carries with it an adverse use by the public; but I think he has used words which superseded the necessity in this instance to do more than he has done. The points raised by this group of exceptions are thus answered, and they are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court is affirmed.

MR. JUSTICE JONES *dissenting.* I am unable to concur in the opinion prepared by Mr. Justice Pope in this case, in so far as it relates to the 6th, 7th, 8th and 9th exceptions. The rule undoubtedly is, that in order to acquire *a private* way by prescription, the user must be adverse to the owner of the soil. *Rowland* v. *Wolfe,* 1 Bail., 56; *McKee*

v. *Garrett*, 1 Bail., 341; *Golding* v. *Williams*, Dudley, 94. This is also the rule in determining what is a "traveled place," under the statute regulating railroads. *Hankinson* v. *Railroad*, 41 S. C., 1. This is also the rule in reference to a public road through unenclosed woodland. *Hutto* v. *Tindall*, 6 Rich., 399. A difference was recognized as to the amount or character of evidence required to show an adverse use of land either as a private or public way, when the way was through unenclosed woodland on the one hand, or enclosed or cultivated fields on the other. In the former case, more positive acts of adverse use were required to establish the way by prescription than in the latter. Since in the latter the mere use of enclosed or cultivated lands by one not the owner was some evidence of an adverse use, but in all such cases the necessity for evidence of adverse use was recognized. I am unable to perceive any reason why a contrary rule should be applied to the acquisition of an alley in a city by the public by reason of twenty years use. In the case of *Hutto* v. *Tindall*, 6 Rich., 400, the Court said: "Public roads of any kind can be established only by public authority, or by dedication, or by long use, which though not strictly prescription, bears so close an analogy to it, that it may be expressed by that term. Less than twenty years use is insufficient to create either a public or a private road. The same period of prescription is applied to both kinds. From a use for that period of time a grant may be presumed. The presumption of a grant is founded on the acquiescence of the owner of the land in the exercise by the public or by an individual of a privilege inconvenient or injurious to the owner, or inconsistent with his exclusive right of property. A neighborhood road differs in its use from a private right of way in this only, that more persons pass along it. The track of the road is not generally of greater width; and the prejudice to the owner by the appropriation of a part of his land for the road and all other incidental inconveniences, attend upon a neighborhood road not less than upon a private right of way. If the injury or inconvenience be greater

in the case of a neighborhood road than of a private way, that is an argument why stronger evidence should be required of the owner's acquiescence. When, therefore, in either case, the use of the way is the evidence from which a grant is to be presumed, the same evidence should be required in both cases." The Court, referring to the case of *State* v. *Sartor*, 2 Strob., 66, said that "circumstances were shown which might give an adverse character to the use. The jury were instructed that as in the case of a private way, the mere use of a neighborhood road over woodland would not give a right; that the use must be adverse, accompanied by acts which show the way was claimed as a right and not by permission of the owner. On appeal from these instructions, the motion for new trial was dismissed." The Court then refers to the distinction drawn by Judge O'Neall, in State *v.* Sartor, *supra,* between the evidence from which a dedication to public use may be presumed and the evidence of a private right of way by prescription, and declares that such distinction is untenable. Then the Court uses this language, in which I heartily concur: "The presumption of a grant of way should be restrained by rules of evidence which may prevent its insidious operation. Too often a use commenced and continued in courtesy after the expiration of the prescribed time is claimed adversely and judicially established as a right. It is only a reasonable security to the landowner that he should be apprised of an adverse claim of a way over his land, before the use has matured into a right, whether the way claimed is a neighborhood road or a private way. No reason can be assigned why, in this respect, any distinction should be made between them." If, then, we are to adopt the test laid down by Judge O'Neall in State *v.* Sartor, *supra,* viz: "the general use by all persons for public purposes for an interrupted period of twenty years," it must be with the qualification made in the case of Hutto *v.* Tindall, that such use must be adverse, or, what is the same thing, under a claim of right to use for public purposes. In the case of *Metz* v. *Metz,* 48 S. C., 472, this Court held, that

in order to presume a grant from twenty years possession, the possession must be adverse. In so far as the right of the public to an alley is sought to be established by presumption of a dedication arising from twenty years use, it would seem that such use should be adverse to the owner of the soil. I do not think the Circuit Court, by the use of the word "unmolested" in connection with the words "continuously for twenty years," in effect charged that the use by the public should be adverse; for it is manifest that a continuous and unmolested use for twenty years is not inconsistent with a continuous but permissive use for twenty years. For the purposes of this point, it may have been that the owner did not molest the public because the public only made such uses of the alley as did not materially interfere with the owner's uses of his own property, or only made such uses as were permitted by the owner in connection with his own private uses as owner. But the Circuit Court did not mean to charge that the use by the public should be adverse, for he, in the plainest possible language, made sharp and pointed for the purpose of leaving no doubt as to his meaning, charged the jury that such use by the public need not be adverse, as contended for by plaintiff's counsel, but that "it is sufficient, if the public used that road in the same place twenty years continuously." This necessarily took from the jury all inquiry as to whether the use by the public was adverse, under a claim of right, or was merely permissive and consistent with the owner's use.

For these reasons, I think that a new trial should be ordered.