## W. E. Downing, Jr. v. Benedict, et al.

(Decided February 20, 1912.)

### Appeal from Allen Circuit Court.

1. **Passway—How Long Must be Used Before Presumption of Grant Arises.**—The use of a right of way by one person over the land of another must be continued at least twenty years before any presumption of grant of the right can arise merely from the use. And then the use must have been enjoyed under such circumstances as would indicate that it had been claimed as a right, and had not been regarded by the parties merely as a privilege revocable at the pleasure of the owner of the land.

2. **Same—Erection of Fences and Gates.**—Where the erection of fences and gates over a passway continued for such length of time as to be sufficient notice to those using it that the owner had not dedicated it to public use, a court has no right to compel a dedication of it except as provided by statute.

BRADBURN & BASHAM and GILLIAM & GILLIAM for appellant.

GOAD & OLIVER for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant became the owner of 130 acres of land in March, 1896, which was first owned by Hardin Celsor nearly a hundred years ago, who conveyed it to John Fraim who conveyed it to Mrs. Harve Faulkner and she conveyed it to appellant on the date named. The land

is situated rather between what is known as "Benedict Ridge" upon which appellees reside, and the public road. It is shown by the testimony that it is very convenient for four or five persons who reside on this ridge to pass over this land in going to and from the county site and other public places, but it is also shown that these persons have another way out which is just as good but the witnesses estimate it to be from one to four miles further. People traveled over this land over sixty years ago when it was a woodland, and appellees claim that this travel was a matter of right and appellant claims that it was by permission of the owner. This travel continued until about forty years ago when Faulkner, who then owned the land, fenced it, after which some went through with Faulkner's permission by letting the fences down and others without his permission. Persons going through, so often left the fences down that Faulkner built a rock fence from what is known in the record as "Big Spring" to a point about one hundred and fifty yards from the spring at which place he made an entrance to his land and placed a gate. He also built a gate at the other end of the passway for his own convenience. Some people continued to pass through these gates with his permission and some without, and thus matters continued until some time afterwards when appellant bought the land. He took the gates down and erected wire fences, as the persons going through would often leave the gates open and allow the stock to get into his field and destroy his crops, and this brought on the issues between the parties.

Appellees claim that as the passway has been used without interruption for more than sixty years, they have a prescriptive right to use it. Appellant claims that the use was permissive only. Appellee introduced many witnesses who testified that they used the passway for the length of time stated, without interruption and as a matter of right; that they were not interferred with in any manner in the use of the road, except they some times had to let down and put up fences or open and close gates. Some of them, however, stated that they asked and were granted permission to use the passway. One of the appellees, a son-in-law of Benedict, said that soon after the erection of the wire fences, he tried to make an agreement with appellant to the effect that he erect gates, put locks on them with four or five duplicate keys and give one to each person on Benedict Ridge who would

have occasion to use the passway. Appellant's testimony conduces to show that the use of the passway by the persons residing on the ridge was by permission only; that the person who owned the land before him always claimed the passway as they did the rest of the land, and Faulkner, who appears to have owned the land longer than any other individual, says that he built the fences about forty years ago and gave several persons permission to use the passway by letting the fences down, but that the fences were left down so often and his crops damaged, that he built the rock fence referred to and moved the entrance to his place up one hundred and fifty yards from the spring and erected a gate at both this point and on the other side of his land for his own convenience, but did suffer and permit others to use them. None of the deeds from Celsor down to appellant make any reservation of the passway. It is apparently evident that those owning the land never at any time recognized the absolute right of any person living on Benedict Ridge to use the passway.

The old English doctrine was that a road or street dedicated to the public use must be accepted by the county court or town, either upon their records or by the continued use and recognition of the ground as a highway for such a length of time as would imply an acceptance. The continued use of a road by the public for fifteen years or more, with the exercise of power on the part of the county court over it, by appointing overseers, etc., would constitute it a highway. Many reasons are set forth in the various authorities upon this subject for departing from the English doctrine.

In the case of Wilkins v. Barnes, et al., 79 Ky., 323, on the last page of its opinion, the court said:

"The principal reason, however, is based upon the new condition of our country, the great extent of uninclosed lands, and the habit which is customary of traveling over them without asking permission, and the frequency of opening roads by owners for their own convenience which other persons are permitted to use. (Bowman v. Wickliffe, 15 B. Mon., 98-9.)

"The cost of enclosing open lands to prevent their use from ripening into prescriptive right, or creating a dedication to the public, would be exceedingly burdensome. And to interpose an objection to the use by a neighbor or traveler of a way opened for the convenience of the owner, although done to protect his title, would render

him obnoxious, because his conduct would be contrary to the custom prevalent in this State.''

In the case referred to in the above quotation, the facts of which are almost identical with those in the case at bar, the court said:

"It has been usual and customary in this State to travel over uninclosed woodland without asking the permission of the owner; and considering the extent and universality of this custom, it tends strongly, if not conclusively, to repel any presumption that might otherwise arise, in such a case, from long continued use of the grant of the right of way by the proprietor of the land. The mere use of this road, then, during the period of time that the land through which it passed was uninclosed woodland, can not be regarded as proving anything detrimental to the rights of the proprieors of the land. Roads are also frequently made and left open by the owner of the land for their own convenience, and the mere fact that other persons are permitted to use and enjoy such roads, does not, of itself, tend to create a presumption of a grant of the right of way by the proprietor of the soil, to them or the public. * * * * * * *

"The use of a right of way by one person over the land of another must be continued at least twenty years before any presumption of a grant of the right can arise merely from the use. And then the use must have been enjoyed under such circumstances as would indicate that it had been claimed as a right, and had not been regarded by the parties merely as a privilege revocable at the pleasure of the owner of the land.''

The erection of the fences and gates in the case at bar continued for so long a time that it was sufficient notice to those using the passway that the owner had not dedicated it to public use, and a court has no right to compel a dedication of it except as provided by statute. If appellant was required to surrender this passway, he would have to erect fences and construct a lane about two hundred and fifty yards long, which would cost him considerable money, or suffer his crops to be injured or destroyed by stock. See the cases of May, etc., vs. Blackburn, 15 Ky. L. R., 705, and Riley vs. Buchanan, 25 Ky. L. R., 863. The principle enunciated in these two cases and those already referred to settle this litigation in favor of appellant.

The judgment of the lower court is reversed, and the case is remanded with directions to the lower court to enter judgment in accordance with this opinion.