## Smith v. Oliver, et al.

(Decided October 8, 1920.)

### Appeal from Allen Circuit Court.

1. Easements—Presumption of Grant—Implication.—The continuous, unexplained and uninterrupted use of a passway over and across inclosed premises will raise the presumption of a grant after such user has continued for fifteen years or more, but no length of time will raise such presumption when it appears that the use at its commencement was permissive, unless in the meantime there has been a distinct and positive assertion of the claim of right to the easement by the one using it, and which assertion

is brought home to the owner of the servient estate and the use continued for fifteen years or more after that time. But the presumption in favor of a grant after the expiration of fifteen years or more may be rebutted by the owner of the land and the use of the passway shown to have been permissive only.

2. Easements—Permissive Use.—The fact that the owner of the servient estate maintained the passway throughout its use and the fact that he constructed and maintained gates across it are relevant circumstances tending to show that the use of the passway was all the while permissive and not adverse.

3. Easements—Permissive Use.—It is also competent proof in such cases that the owner of the servient estate attached conditions and imposed terms upon which his neighbors might use the passway as tending to show that its use was by virtue of a privilege only which could be revoked at any time.

4. Easements—Permissive Use.—Evidence examined and held that the use of the passway in this case was permissive and not exercised under a claim of right and that the owner of the land over which it ran could close it at any time.

NOEL F. HARPER for appellant.

GILLIAM & GILLIAM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellees, M. J. Oliver and others, who own a farm in Allen county joining on the north that of appellant and defendant below, W. H. Smith, brought this suit against the latter in the Allen circuit court to enjoin him from closing a passway over and across his farm and running from the premises of plaintiffs to the Halifax and Halfway public road, which road borders the southern boundary of defendant's farm. It is alleged in the petition that plaintiffs and their ancestor, George W. Oliver, have acquired by more than fifteen years' adverse use of the passway in question a prescriptive right thereto and that defendant's act in closing it was wrongful and illegal. The answer traverses the allegation of the petition and a trial had, after taking a large volume of proof, resulted in a judgment sustaining plaintiffs' claim and perpetually enjoined defendant from stopping the passway in the manner complained of, and to reverse that judgment defendant prosecutes this appeal.

The law with reference to the acquisition of a prescriptive passway over the land of another by adverse user is well settled in this state. The first proposition about which there is no conflict is that the uninterrupted, continuous and unexplained use of the passway by the claimant thereto for a period of as much as or more than

fifteen years will raise a presumption that the use was under a claim of right which became absolute at the expiration of the fifteen years when the claimant would become vested with the title to the passway which the owner of the servient estate must acknowledge and respect. Some of the later cases recognizing this rule are: Swango v. Green, 155 Ky. 227; Frightmaster v. Taylor, 147 Ky. 469; Rogers v. Flick, 144 Ky. 844; Driskill v. Morehead, 147 Ky. 107; Jefferson v. Callahan, 153 Ky. 38; Wray v. Brown, 155 Ky. 757; Salmon v. Martin, 156 Ky. 309; Winlock v. Miller, 167 Ky. 717; Mitchell v. Pratt, 177 Ky. 438; Smith v. Pennington, 122 Ky. 355, and Brookshire v. Harp, 186 Ky. 217. The theory upon which this principle rests is that the character of use described raises a presumption of a grant in favor of the claimant of the easement, but the cases referred to also assert a second equally well settled proposition, that the presumption arising from such use is not a conclusive one but is only a rebuttable one under and by virtue of which the owner of the servient estate may show in a controversy involving the right to the easement that the use of it by the claimant was in fact permissive only, in which case the use would be but the exercise of a license, which the owner of the servient estate might revoke at pleasure. Just here it might be well to state that the principles of law above recited do not apply with the same force where the asserted easement traverses uninclosed woodland. Downing v. Benedict, 147 Ky. 8; Bales v. Rafferty, 161 Ky. 511; Wray v. Brown, *supra,* and Winlock v. Miller, *supra.* This distinction, with respect to inclosed and uninclosed land traversed by a passway, is thus referred to in the Wray case:

"And so, too, there is and ought to be a marked distinction between the right of the owner of land to stop by inclosure or cultivation long continued travel through a woodland and to stop long continued travel through inclosed or cultivated land."

The court then cites and quotes from the older case on this point, Bowman v. Wickliffe, 15 B. Mon. 84, and points out the distinction between that case and the later ones of O'Daniel v. O'Daniel, 88 Ky. 185; Talbott v. Thorn, 91 Ky. 417, and Hansford v. Berry, 95 Ky. 57. It was shown in the Wray opinion that the later cases cited did not change the law with reference to the acquisition of an easement across uninclosed land as originally announced in the Bowman case, since in those later cases the

court was influenced by the fact that the passway involved in each of them "was *necessary* to the use of the lands occupied by the persons asserting a right to it and had been so used by them without interruption for many years."

Another proposition applicable to prescriptive acquisitions of passways is that where the use at its inception is shown to have been permissive no length of time may ripen it into a right unless in the meantime there has been a distinct and positive assertion of a claim of right to the easement and which assertion is brought home to the owner of the servient estate. Louisville & Nashville Railroad Co. v. Cornelius, 165 Ky. 132; Winlock v. Miller, *supra,* and many of the cases above cited.

With these principles of law firmly settled it becomes necessary, from the uncontradicted facts found in the record and those which we conclude the testimony establishes, to determine the rights of the parties. The passway in question is something like three hundred yards long and runs through a lane, or what according to the testimony might be more properly called a lot, about sixty feet wide, extending from a large pond on the northern edge of defendant's farm southward to the public road. The passway runs through the pond, which, according to the proof, is always from three to four and one-half feet deep, depending upon the season of the year. Prior to 1885 members of the public occasionally traveled an old road which ran just east of the passway in controversy, but it ran through uninclosed woodland and its use, according to the proof, was by no means sufficient, under the authority of the cases, *supra,* to show that it was exercised under a claim of right. In the year referred to John Cooksey, the then owner of the farm now owned by defendant (and who is now dead) gave to his son, Joe, a lease of thirty acres of the farm on the northern portion of it, the leased premises being just east of plaintiff's farm. To enable his son a ready access to the public road and perhaps to some necessary outbuildings on the farm the father agreed to permit his son to pass over that portion of the farm lying south of the leased premises and he then fenced off the lot through which the passway now runs and constructed and thereafter maintained at his own expense some gates across the lane or lot as well as one at each terminus. About that time, some few neighbors, living in the vicinity of the son's lease, one of whom was George

Oliver, the ancestor of plaintiffs, commenced to use the passway, but it is indisputably established that in the presence of, or directly to, one of the plaintiffs, John Cooksey stated in substance that he did not object to his neighbors using the passway· (which he had opened for his son) if in doing so they would close the gates, and further, that he did object to its use for hauling heavy loads in wet seasons. It is likewise indisputably shown that to a number of other members of the public he made · similar statements and at one time positively forbade one person from using the passway. The only foundation for the right attempted to be asserted by the plaintiffs is their use of the passway as members of the public. It is shown without contradiction that the lot or lane, through which the passway runs, was used by John Cooksey as a kind of stock lot in which to herd his cattle and to enable them to have access to the pond. He threshed his wheat in that lot and stacked the straw therein and used it in such a way as to absolutely indicate to our minds an absolute control over it inconsistent with any adverse user by plaintiffs or any other member of the public.

After the expiration of the son's lease, and in 1895, John Cooksey sold the land, upon which his son held the lease, to a Mr. Pruitt, and in that deed he conveyed to Pruitt the right to use the passway to the public road, but further inserted in the deed that, "said second party (Pruitt) bind themselves to give first party refusal to land when for sale." It further appears that just west of plaintiff's farm is a country road leading to the Halifax and Halfway public road which has been open and used about, if not quite, as long as the passway in question and John Cooksey dedicated a strip of land seven (7) feet wide on the west boundary of his land to the establishment of that road. The plaintiff has acquired and now owns all of the John Cooksey farm, including that portion which was sold in 1895 to Pruitt, and he has thereby acquired all of the rights in the passway formerly owned by Pruitt. Under these facts we find ourselves unable to agree with the learned trial judge in his conclusions of law applicable thereto, since we are convinced that the use of the passway by plaintiffs and other members of the public from the time they began it was permissive only and not adverse or under a claim of right. In other words, we conclude from the facts that the presumption of an adverse user is rebutted by the testimony in the record which shows it to have been per-

missive. This court has held in the cases of Warth v. Baldwin, 27 Ky. L. R. 339; Downing v. Benedict, *supra;* Bales v. Rafferty, *supra,* and Mitchell v. Pratt, *supra,* that the fact of the erection and maintenance of gates by the owner of the servient estate is a relevant circumstance strongly tending to prove that the use of the passway was a mere extension of a privilege and was permissive only.

In the Rafferty case the passway was originally used across uninclosed woodland. For more than fifteen years before the suit involving its right arose Rafferty, the owner of the servient estate, cleared the land and erected a gate at the point where the passway emerged from his farm. At other points across the passway he maintained bars, as did Cooksey maintain gates in this case. He used the space over which the passway ran for his own purposes, which were inconsistent with an adverse ownership of the easement, as did Cooksey in this case, and the court in denying the property right of plaintiff in the passway said:

"Under these cricumstances, we are unable to say that the use of the disputed passway after the enclosure of Rafferty's farm, was anything but permissive. Rafferty's acts in connection therewith were such as to indicate that he regarded the passway as one which was not subject to use by others by virtue of a claim of right, but revocable solely at his own pleasure."

In the Baldwin case the court recites as a fact strongly indicative of the permissive use of the passway that "They (owners of the servient estate) erected the gates and kept them in repair for their own use and as a favor to their neighbors, and received no aid whatever in making the gates, repairing them or in keeping the passway fit for travel." The fact is also emphasized in that case that plaintiff "did not prove by a single witness that his use of the passway was claimed and exercised as a matter of right or adverse to the owner of the land through which the way passed." The same is true in this case. No reference is made by any of the plaintiffs in their testimony or any witness who testified for them as to the manner of the use of the passway. They contented themselves with testifying only to the length of time of their use.

In the Mitchell case, it is said: "The fact that the gates were erected and maintained by the owner of the land over which the passway ran and not by the claim-

ants is a circumstance indicating that the use of the passway was permissive only.'' This rule of evidence, to our minds, is both reasonable and logical, for why would the owner of land not only voluntarily consent to its incumbrance with an easement, but assume in addition thereto the burden of maintaining that easement and also mantaining a number of gates necessary to the use of the easement by its owner? It is more reasonable to conclude that the kind and obliging owner was willing for his neighbors to cross his farm for their convenience and was willing to maintain the gates so that they might exercise that permission privilege with the right in himself to discontinue it at pleasure.

Additional facts appearing in this case showing a permissive use only, are the conditions which John Cooksey imposed when talking about it to the members of the public generally, including at least one of the plaintiffs. If the use of the passway was adverse, as plaintiffs now claim, it was absolute and free from any conditions or terms which John Cooksey might impose. Furthermore, he did not recognize the right in any one to the passway when he executed the deed to Pruitt, otherwise he would have hardly conveyed to Pruitt an outlet over this particular passway. The fact of the use being permissive, at least in the mind of John Cooksey, is also emphasized by the reservation which he inserted in the Pruitt deed, which indicates that he was unwilling for a perpetual passway to be established across his farm and he therein provided a way by which it might become merged and destroyed.

The law pertaining to the acquisition of passways by a presumed grant, resulting as it does in the encumbrance of another's property, should not be extended so as to work that result through mere neighborly courtesies between adjacent landowners.

Notwithstanding our great respect for the opinion of the learned trial judge we are forced to the conclusion that his findings of fact are contrary to the preponderance of the evidence. In such cases it is our right as well as duty to reverse the judgment, which is accordingly done with directions to dismiss the petition.