## Nichol v. Blackburn, et al.

(Decided January 26, 1926.)

### Appeal from Warren Circuit Court.

1. Easements—Unexplained and Uninterrupted Use of Passway Raises Presumption of Grant.—Unexplained and uninterrupted use of passway for 15 years raises presumption of grant of easement and places burden upon servient estate to prove that use was only permissive.

2. Easements—Use of Passway, at First Permissive, May Become Right to Easement—Use Must Continue for 15 Years After Claim of Right.—Where use of passway was permissive, in its inception, it will not ripen into easement, unless there is subsequent, distinct and positive assertion of claim to such right made by user and brought home to owner of servient estate, and adverse use for 15 years thereafter.

3. Easements—Use of Passway by Public for Fifty Years did Not Become Easement.—Where passway was opened by owner for use of patrons of saloon, and later widened to accommodate patrons of breeding stable. and there was no subsequent, distinct, or positive assertion of claim to its use as matter of right, ensuing use did not ripen into easement, although long continued.

THOMAS, THOMAS & LOGAN for appellant.

RODES & HARLIN for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In an equitable action in the Warren circuit court the plaintiffs, Mrs. H. M. Blackburn and Mrs. V. R. Bradburn, were granted a permanent injunction against the defendant, Mrs. Annie Nichol, restraining her from closing or obstructing a certain alley or public passway in Woodburn, a town of the sixth class. Defendant appeals.

The streets in the town of Woodburn run with the cardinal points of the compass. The right-of-way of the

L. & N. railroad runs directly north and south, near the center of the town, and is intersected by several streets running east and west, two of which are "East Market street" and "East Main street." South of East Market street there is a space on either side of the railway tracks, which is used as a public street, known as "West Railroad street" and "East Railroad street." The switch tracks of the railroad begin at East Market street and run in a northerly direction past East Main street. The depot is to the west of the tracks about midway between those two streets and the adjacent land is owned by the railroad company and not enclosed. The railroad company also uses the space on the east side of its tracks opposite the depot as a passanger platform, its right of way at this place running to the property line of the various residences, and east of the tracks this is surfaced with screenings and used by the public in traveling from East Market street to East Main street. Walnut street runs parallel with the railroad right-of-way and all the parties to this litigation live in the block enclosed by the railroad right-of-way, "East Main," "Walnut," and "East Market streets. This block is also divided by a central alley running parallel with the railroad right-of-way and Walnut street from East Main to East Market street, there being six lots facing Walnut street and six facing the right-of-way.

Plaintiffs reside on the third and fourth lots facing Walnut street. Defendant on the third lot from the south facing the right-of-way, the rear of her lot being opposite the rear of the lot of Mrs. Bradburn, one of the plaintiffs. The passway in question runs from the alley above described westward on the lot of defendant next to the line of Mrs. Landers to the railroad right-of-way. It does not extend from the middle alley eastward to Walnut street. There is no claim upon the part of plaintiffs that it is appurtenant to their lots or that they have any easement therein aside from that possessed by the general public. It is not claimed that there has ever been any formal dedication of it, either as an alley or passway or that the town council has ever formally accepted it or exercised any jurisdiction over it by improving it or otherwise. It does not appear as an alley or passway upon any of the public maps of the town, though the space it occupies is indicated on the map as a lot under the name of "Matlack and Duncan," it not appearing what is signified by these words, and from

the evidence of the city officers it appears that the municipality is disclaiming any interest in it. In the last analysis the chief, if not the only claim made on behalf of plaintiff is that it is a public passway by virtue of adverse user, in which a dedication and acceptance will be presumed and that this constitutes a right that may be enforced by private individuals. It appears from the evidence that this passway has been open and in use continuously for a period of fifty years, not as a matter of necessity, as it is easy to reach Railroad street from Walnut street by going on either East Main or East Market street, but as a matter of convenience for persons passing that way. At present plaintiffs may go through the gates at the rear of their premises and through this passway and across the tracks and open lot of the railroad company to that part of the town lying beyond. As stated, it does not extend from the middle alley to Walnut street. Mrs. Bradburn intimates a willingness to permit travel through her yard and gates from Walnut street to the middle alley, but this is permissive only, and if used as a public passway the travel must be down Main or Market streets to the middle alley; thence up the alley to this passway and out to the railroad right-of-way, which could scarcely constitute an advantage to anyone aside from plaintiffs. True, this is not a proceeding to establish a passway and the convenience or necessity of such is not in issue, except as these may throw light upon the purposes and conduct of the parties when it was first used.

According to the defendant's evidence, many years ago there was a saloon on the corner of her lot facing the right-of-way and next to her north line from which a narrow enclosed path led back along the line of the lot for the use of the patrons of the saloon; that in the year 1872 her predecessor in title, Mr. A. B. Taylor, removed this saloon to another place; that he then owned the lots upon which plaintiffs reside and constructed a stable on the rear of the lot now owned by Mrs. Bradburn. Fine horses were kept in the stable and the premises used for breeding purposes. For the convenience of himself and patrons, Taylor widened the passway to about twelve feet, and it has remained fenced since. At that time the Bradburn lot was unimproved except for this stable and there was nothing to prevent anyone from wandering over it at will; patrons and the public generally being invited to the stable and of course granted permission to

use the passway without a request therefor. About fifteen years ago the railroad company planted three posts at the mouth of this passway which blocked vehicular traffic, though pedestrians could walk between them. Later it constructed a baggage room on its right-of-way across the front of the mouth of the passway, and since then those using it have been compelled to turn to the south upon the corner of defendant's lot, though it is claimed by plaintiffs' witnesses that this turn has existed all of the time.

It is established that the unexplained and uninterrupted use of a passway for fifteen years raises a presumption of a grant and places the burden upon the servient estate to prove that the use was only permissive. Bryan v. Rash, 30 L. R. 1153; Riley v. Buchanan, 116 Ky. 625; Wathen v. Howard, 22 L. R. 7. In the Riley case it is held that such conduct is sufficient to indicate a dedication to, and acceptance by the public, and that an individual may sue to enforce this public right. But the presumption named may be rebutted and the facts are always open to explanation. If it is shown that the use of the passway was permissive in its inception it will not ripen into a right unless there is a subsequent distinct and positive assertion of the claim of right to the easement made by the user and brought home to the owner of the servient estate and an adverse use of same for fifteen years thereafter. Smith v. Oliver, &c., 189 Ky. 214; L. & N. R. R. Co. v. Cornelius, 165 Ky. 132; Winlock v. Miller, 167 Ky. 717; Stevens v. Hamblen, 195 Ky. 428. Considering the facts of this case in the light of this law, it does not appear that, when the passway to the saloon was first opened or that when it was widened to reach the breeding stables, there was any public call or necessity for this passway. The presumption is that the patrons of the saloon used it for purposes of their own, and that the next use of it was by the patrons of the breeding stables. Naturally such persons would not stop to ask permission, as this would be implied, and under such circumstances other persons desiring to use the passway as a matter of convenience or favor would not think of asking permission or procuring a grant, nor would the landowner expect such request. We entertain no doubt that such was the original use of the passway, and for that reason neither a grant nor dedication to the public can be presumed. There is no evidence that at any time subsequently there was any

distinct or positive assertion of the claim as a matter of right, and consequently the ensuing use did not ripen into an easement, although continued for as much as fifty years. It follows that the circuit court erred in enjoining the plaintiffs from enclosing this passway.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.