## Roberts et al. v. Burkhart et al.

March 24, 1942.

J. R. Llewellyn and S. V. Little for appellants.

A. T. W. Manning and Edward R. Hays for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Floyd and Sallie Burkhart instituted this proceeding to have Mr. and Mrs. George Roberts remove certain obstructions which they had placed in a passway through their farm and to have them permanently enjoined from impairing the passable and usable condition of the way. The land owned by the Robertses abuts Highway 80 in Laurel County and that of the Burkharts is some 300 yards back from the highway. The passway in question is used by the Burkharts in getting to the highway. The

Robertses denied the allegations as to the Burkharts' prescriptive right to use the passway, and after proof was taken they set up a claim to the way through adverse possession. The proof was taken before the chancellor on the Burkharts' motion for a temporary injunction and at the request of the Robertses the chancellor personally inspected the way and the adjacent premises. His opinion and order sustaining the temporary injunction sets forth further that he is personally acquainted with the parties and many of the witnesses who testified before him, and "from all of which he is convinced that the plaintiffs are entitled to the relief sought in their motion." The final judgment granted the Burkharts the relief prayed.

Formerly there was an old rail fence between the lands now owned by the Burkharts and the Robertses. The Roberts land was in woodland until some 30 or 35 years ago. It was then cleared and the rail fence was replaced with a wire fence. The proof shows that the passway in question had been used for many years. It was used by children going to and from school until the school was removed some 25 or 30 years ago, and by persons going to and from church, as well as those using it for other reasons. Travel was mostly on foot and horseback in the early days, with an occasional wagon passing along the way. The parties who owned the land before it was purchased by the Robertses bought the school building. For several years a mail carrier used the way going from the post office along his route. The old rail fence was let down by those who had occasion to go along the way with wagons, or on horseback, and a short time after the wire fence was erected on the division line the then owner of the Roberts land erected gates across the passway. There is proof, of course, that the way was used by the owners of the Roberts tract for their own convenience and that the gates were put there for that purpose. There is also proof that a few persons requested the right to use the way, as well as proof that a predecessor of the Burkharts asked permission to nail up the gate on the division line at one time to stop persons from passing over his property. There is proof on the other hand that the way had been used as a matter of right for many years and that its use was not by permission; and also, that it was not uncommon in this section of the state for passways to be fenced in the early days. The appellants contend that, if the public ever acquired

any right to use the way in going to the schoolhouse, when the school was discontinued and the property sold to the then owner of the Roberts tract and he fenced the pathway, that constituted an overt act of adverse possession, and that he and those claiming under him acquired title to the school path at the end of 15 years. They contend further that, when the Roberts land was cleared and fenced, the public was put on notice of the adverse holding of the owners. The point is made also that it was necessary for those using the way to let down fences or open gates, and therefore they were not using it without let or hindrance.

The case of Downing v. Benedict, 147 Ky. 8, 143 S. W. 756, is stressed. In that case there was proof that the way had been in use for more than 60 years, one side claiming that the use was by right of prescription and the other that it was permissive only. Some of the witnesses testified that they had asked permission to use the way and a witness for those claiming the right to use the way said that soon after the erection of fences where gates had been he tried to make an agreement with the owner of property through which the way passed to the effect that he erect gates and put locks on them. There was also proof that a former owner had fenced the way and had given several persons permission to use it by letting the fences down and that he finally erected the gates after the fences were left down so often, and that he moved the entrance to his place some 150 yards and erected a gate at this point and one on the other side of his line for his own convenience, but did permit others to use them. In the case at bar there seems to have been little, if any, effort made upon the part of the owners of the Roberts tract to stop the use of the way until the controversy before us arose. The point is made in the Benedict case that the erection of fences and gates for a long period of time was sufficient notice to those using the way that the owner had not dedicated it to public use, and if the owner was required to surrender the passway he would have to erect fences and construct a lane for some 250 yards or suffer his crops to be injured or destroyed by stock. There is no question of the erection of fences involved in the present case. The Burkharts are the only ones insisting upon the right to use the way and they are not objecting to the presence of the gates, and the chancellor did not direct their removal. It seems to us it would be more plausible to say in the present case

that the erection of the gates was a recognition on the part of the owner of the Roberts tract that the way was being used as a passway by others. We have noted the proof for the appellants that the gates were erected for the use of the then owner of the Roberts land, but the proof conclusively shows that many persons have used the way in question for a long period of years. While there is similarity between this case and the Benedict case, we think it is distinguishable from this one, as in-dicated above. Further, we are always reluctant to disturb the finding of the chancellor where we have no more than a doubt as to the correctness of his ruling. Engle v. Moore, 288 Ky. 419, 156 S. W. (2d) 466, and cases cited therein. We think that it is significant also in this case that he visited the premises and apprised himself of the conditions surrounding the way and, as he pointed out in the opinion and order granting the temporary injunction, he knew the parties and most of the witnesses personally and therefore was in a position to weigh properly their testimony.

Wherefore, the judgment is affirmed.