## Isaacs et al. v. Karnes.

November 19, 1946.

P. K. McElroy for appellants.

Henry G. Boldrick for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Sam E. Isaacs and William G. Isaacs, the appellants, sought injunctive relief and monetary damages against G. H. Karnes, the appellee, growing out of a roadway controversy among these parties.

The chancellor having refused to grant any of the requested relief or damages and having dismissed their petition, the appellants now prosecute this appeal.

The basic ground of this appeal is, in sum and substance, appellants' contention that the chancellor's judgment is erroneous because it is not supported by the established facts and the applicable law of this case.

The controversial roadway runs in a general north and south direction between Kentucky Highway 52 and Kentucky Highway 84 at a location about 5 miles west of Lebanon. This roadway has, for the purpose of this litigation, 3 parts or segments which we herein designate X, Y and Z. After the appellant, Sam E. Isaacs, and the appellee had engaged in some previous arguments about opening up this entire roadway, the appellee took matters into his own hands and hired a piece of road machinery, commonly called a bulldozer, and had the roadway opened by "bulldozing" through it and by removing some gates, fencing, saplings and other obstructions along the route.

Following these steps taken by appellee, the appellants sought an injunction in the instant case to prevent appellee from using the "bulldozed" roadway, to compel appellee to restore its "prebulldozed" condition and to recover monetary damages for the after effects of this "bulldozing" activity. Appellee already had one outlet on his north side, but he evidently wished to open up this other roadway towards the south in order to facilitate a proposed sale of a portion of his farm on the south side. Appellants opposed the opening of this roadway because it would interfere with a particular usage of one part of their own farm in and about the southern end of the controverted roadway. However, the motives of these parties, whatever they may have been, would not appear to have any substantial significance in a case of this kind. We now take up the three segments, X, Y and Z, of this roadway in order to determine the rights of these parties in relation to each segment.

Segment X. This runs from Highway 52 down to Hardin's Creek, and since appellee appears to have a deed covering the dimensions of this segment and since there is no evidence whatever of a superior claim within the appellants to this segment, either by paper title or by adverse possession, it must be concluded that the chancellor was correct in refusing to grant any relief whatever in appellants' behalf in relation to segment X. The chancellor stated, and we believe correctly so, that appellants make no serious claim upon this segment. Ordinarily, a man would be presumed to possess the privilege of "bulldozing" among the rocks and rills and templed hills of his own estate.

Segment Y. This runs from Hardin's Creek down to an old highway roadbed or right of way, which roadbed was the antecedent of State Highway 84 before the latter was straightened at this point. The length of this segment is only 87 feet, according to appellee, or 100 feet, according to appellants. Appellants do not claim to have any paper title to any part of this segment, excepting in one corner of it, in an area about 16 1-2 feet square or about 1-160th part of an acre. Likewise, they do not appear to have established a claim to this segment Y by adverse possession. We find this testimony by appellant, Sam E. Isaacs:

"Q. 26. Did you ever have this disputed 100 feet under fence? A. Part of it.

"Q. 27. When was the fence erected? A. I don't know.

"Q. 28. Was it erected after you purchased your land (appellants purchased in 1942 according to the record)? A. Yes sir."

The chancellor did not give appellants the 1-160th part of an acre for which they established a paper title because this small square, and likewise the remaining part of segment Y, had been, as the chancellor said, under adverse user as a general public roadway for more than 15 years.

In support of the chancellor's finding of an adverse user of segment Y, including appellants' 1-160th part of an acre, we find this testimony, in addition to other testimony on the same subject, as follows:

"Q. 11. Are you familiar with the passway that used to exist from the Cissell River Pipe (State Highway 52) across the old Phillips land now owned by Mr. Karnes down the roadway to the creek, across the strip to the old St. Mary county road (old state highway roadbed)? A. I am.

"Q. 12. How long have you known that passway? A. All my life.

"Q. 13. In years, how many years has that passway been used to your personal knowledge? A. Well, it has been used—I am 45 and I can remember when I was 6 or 7 years old—used up that branch—what was the road sold to my father and Mr. Ed O'Daniel and Mr. Ed Phillips.

"Q. 14. Has that passway been used continuously since you were 6 or 7? A. It has.

"Q. 15. As a passway? A. It has."

Segment Z. This part of the controversial roadway consists of the old roadbed, the antecedent of State Highway 84, which was left behind and relegated to the background when State Highway 84 was straightened. It extends southwestwardly from the segment Y junction with it to its own junction with the present State Highway 84.

Although this segment Z had some gates along its well defined course, these gates appear to have been erected by some of the neighboring landowners about the year 1940, while previously to that year, segment Z and the other two segments of this roadway seem to have been in rather constant use for more than 15 years as a neighborhood passway to facilitate travel convenience between State Highways 52 and 84. Appellee directs our attention to the fact, established by his evidence and not controverted by appellants, that this segment Z was never abandoned with the statutory formalities provided by KRS 178.020 et seq. Appellee appears to be correct in his contention that this old roadbed would have to be considered as a presently existing thoroughfare, now that the issue has been raised by an interested citizen and in view of the fact that the legal formalities of highway abandonment have not been followed in this instance.

It seems to us that the chancellor's judgment must be sustained in this case. Accordingly, some of the principles of law that appear to be applicable to the issues which were presented to us by this litigation, we now set out in paragraphs hereinafter following.

Where a right to a passway by adverse user for more than 15 years is shown, the questions of the necessity or convenience of the passway are immaterial. Ray v. Nally, 89 S. W. 486, 28 Ky. Law Rep. 421.

The use of a way under a claim of right continuously for 15 years or more ripens that use into a right. Hendrickson v. Cruse, 221 Ky. 190, 298 S. W. 710; McCarty v. Blanton, 219 Ky. 450, 293 S. W. 958.

If an examination of the evidence in an equity case leaves this court in some doubt as to whether the weight of such evidence is upon one side or the other, that doubt should be resolved in favor of the judgment that has been rendered by the chancellor upon the trial. Home Ins. Co. of N. Y. v. Stroud, 244 Ky. 315, 50 S. W. 2d 934.

This court is inclined to give added weight to a judgment rendered by a chancellor in a case where the record indicates the chancellor has personally visited the locale and its surroundings embracing the specific subject of a complicated disputation. Roberts et al. v. Burkhart et al., 290 Ky. 136, 160 S. W. 2d 644.

The chancellor in this case visited the scene of the roadway in controversy and thus informed himself as to an exact situation, the complexities of which we found some difficulty in thoroughly understanding from the mere evidence on paper in this record. The chancellor is presumed to have known all the witnesses who testified on each side of this case, some asserting, some contradicting the continuous, adverse, fifteen year user of the passway in controversy. His decision must necessarily be given the substantial weight and the merited value to which it appears entitled. There was, in this case, and before the chancellor, a quantity of evidence of such quality and substance as to indicate that he was legally justified in rendering the judgment from which this appeal was prosecuted. Under ordinary circumstances, we disturb a chancellor's judgment with some degree of reluctance. And where the opponents of such judgment come into this court with what we must consider as an insufficient demonstration of its erroneous nature to the prejudice of themselves, an added immutability of the judgment necessarily accrues.

Wherefore, the judgment of the chancellor is now hereby affirmed.