**Kim McINTYRE and Steve McIntyre, Petitioners,**

v.

**BOARD OF COUNTY COMMISSIONERS, GUNNISON COUNTY, Colorado; Sierra Minerals Corp. and Omya Inc., Respondents.**

**No. 02SC803.**

Supreme Court of Colorado,
En Banc.

March 15, 2004.

knowing and intelligent under *Miranda*. *See Mejia–Mendoza*, 965 P.2d at 780.

Kim McIntyre, Steve McIntyre, Tempe, Arizona, Petitioners Appearing Pro Se.

David Baumgarten, Gunnison, Colorado, Attorney for Respondent.

Beth A. Dickhaus, Thomas J. Lyons, Denver, Colorado, Attorneys for Amicus Curiae, Colorado Counties, Inc.

Justice HOBBS delivered the opinion of the court.

We granted certiorari in this case to review the court of appeals decision in *Board of County Comm'rs v. McIntyre*, No. 01CA2408, 2002 WL 31112520 (Colo.App. Sept.19, 2002).[1] The trial court ruled on summary judgment that Gunnison County had obtained a road by prescription across certain private lands pursuant to section 43–2–201(1)(c), 11 C.R.S. (2002). The court of appeals affirmed the trial court. We reverse. We hold that the county failed to meet the claim of right requirement of section 43–2–201(1)(c) for the establishment of a public road by prescription across the McIntyre lands.

I.

The petitioners, Kim and Steve McIntyre (McIntyres) own six mining claims near the Town of Marble in Gunnison County. They purchased their property from L.E. Schooley and Associates (Schooley) in 1994. Schooley had acquired the property by virtue of a tax deed in 1960; there is no evidence in the record of a deed in the chain of title that contains a dedication, reservation, or exception for a public road across the McIntyre property.

The McIntyre property includes a portion of an old electric tramway route that the Colorado Yule Marble Company operated to

1. We granted certiorari on the following issues:

 1. Whether section 43–2–201(1)(c), 11 C.R.S. (2002) requires the government to give notice of public use or of a public claim of right to the landowner before acquiring property by prescription.

2. Whether respondent denied petitioners' constitutional right to due process prior to property deprivation by taking a trail by prescription across petitioners' private property as a public road where respondent never notified petitioners of any claim of right for public use of that trail.

haul marble to the Town of Marble from its quarry. The quarry adjoins the McIntyre land.

In 1941 the Marble Company ceased operations. Marble from the quarry was used in building the Lincoln Memorial and the Tomb of the Unknown Soldier, among other notable public buildings in the United States; so the quarry site has significant historical and tourist value to the Town of Marble and Gunnison County. The public has traversed the approximately three-plus mile route from the Town of Marble to the quarry site since the 1940s by four wheel drive vehicle and footpath. Only a footpath exists across the McIntyre property because of a steep gradient that veers away from Yule Creek, severe erosion on sections of the footpath, and marble spoil piles which block vehicle access across the McIntyre lands.

William Bush, a Schooley partner, testified that approximately six to eight people per week walked the former tramway route across the McIntyre property from the 1960s to the 1990s to access the quarry site and public lands for recreation. Bush built and maintained a fence across the former tramway route on the McIntyre property for a short time in the early to mid 1960s. Some of these people who walked across the property during the 1960s to the 1990s requested permission; some did not. When requested, Bush always granted permission. Bush testified that he never saw any member of the public use a vehicle to cross the property.

In 1986, Schooley gave written permission to the Colorado Department of Mined Land Reclamation to enter the property and build a boardwalk over a washed out section of the route as part of a state mined land reclamation safety project on the Colorado Yule Marble Company quarry site. This agreement expressly provided that the landowner waived no rights by granting access permission to the State.

In the 1990s, the Colorado Yule Marble Company reopened the quarry. Avoiding that portion of the impassable old tramway route across the McIntyre property, the Marble Company cut a new road to access the quarry from the vehicle-passable portion of the old tramway route. Concerned about liability arising from the deteriorating footpath and wastes that walkers left on their property, the McIntyres closed the footpath across their property in the mid-90s.

At present a graveled road from Marble ends in a parking lot, located off of the McIntyre property, from which persons can take a private tour to the quarry site on a trail or the road that the quarry operators installed off of the McIntyre property in the 1990s. Foot access to the quarry's vicinity is also available from the parking lot via Forest Service trails.

At no time during the prescriptive period from the 1960s to the 1990s the trial court found to exist in this case did Gunnison County include the footpath across the McIntyre property on its road and trail system, or perform any maintenance activity on the path. The uncontested evidence in the record, including testimony of Gunnison County officials, was that the County had never assumed "jurisdiction" over the trail on the McIntyre property during the prescriptive period.

However, when the McIntyres commenced excluding members of the public from their property, Gunnison County brought this action against them, seeking a declaratory judgment that the route across the McIntyre property is a public road pursuant to section 43–2–201(1)(c). Following evidentiary hearings, the trial court granted a preliminary injunction against the McIntyres in favor of the County, preventing them from barring members of the public from using the footpath.

The County amended its pleadings under C.R.C.P. 105 to quiet title against all property owners along the old tramway route from Marble. After further proceedings, the trial court entered a quiet title decree "for a public highway pursuant to C.R.S. 43–2–201(1)(c) dedicated to public uses under the jurisdiction of the Board of County Commissioners of the County of Gunnison, Colorado" for the entire length and width of the old tramway route, up to sixty feet in width. The court of appeals affirmed. No party to the quiet title action, other than the McIn-

tyres, appears before us to challenge the quiet title decree.

Limiting our decision to the McIntyre property, we conclude that the trial court and court of appeals failed to properly apply the criteria of *Board of County Comm'rs v. Flickinger,* 687 P.2d 975 (Colo.1984), in considering whether a public road existed by prescription across the McIntyre property. Among other requirements, *Flickinger* requires the public entity to prove a claim of right to the public road. The facts of record on summary judgment do not support that Gunnison County took any overt action meeting the claim of right requirement to commence running of the prescriptive period for establishment of a public road on the McIntyre property under section 43–2–201(1)(c). Accordingly, the trial court and court of appeals erred in ruling that the footpath along the former tramway route across the McIntyre property became a public road by prescription.

## II.

◼ We hold that the county failed to meet the claim of right requirement of section 43–2–201(1)(c) for the establishment of a public road by prescription across the McIntyre property.

◼ In conducting our review in this case, we recognize that a court may enter summary judgment when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. We review de novo an order granting summary judgment. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

Our decision in this case reiterates that the claimant for a public road by prescription must demonstrate the following: (1) members of the public have used the road in a manner adverse to the landowner's interest *and* under a claim of right; (2) the public has used the road, continuously, for twenty years; and (3) the landowner had actual or implied knowledge of the public's use and made no objection to that use of the road.

We are concerned here with the claim of right requirement. To satisfy the claim of

right requirement, the claimant must provide evidence that a reasonably diligent landowner would have had notice of the public's intent to create a public right of way. The evidence must include some overt act on the part of the public entity responsible for public roads in the jurisdiction sufficient to give notice of the public's claim of right. This notification to the landowners starts the prescriptive period; without such notice, the prescriptive period does not begin.

### A. Private Prescription and Public Road Prescription Differentiated

The case before us commenced as an action against the McIntyres, then became a quiet title action between Gunnison County and all claimants pursuant to C.R.C.P. 105. This rule provides for complete adjudication of the rights of all parties who, when served, have the opportunity to adjudicate their claim of right to an interest in the real property. *Board of County Comm'rs v. Timroth,* 87 P.3d 102, 105 (Colo. 2004).

In the case before us, the trial court and the court of appeals ruled that twenty years of public use adverse to the property owner was itself sufficient to establish a public road by prescription under section 43–2–201(1)(c). These rulings make the requirements for private prescriptive rights and public prescriptive road rights the equivalent of each other. They are not.

In regard to private prescriptive rights, section 38–41–101(1), 10 C.R.S. (2003), provides that eighteen years of "adverse possession of any land shall be conclusive evidence of absolute ownership" in a case for recovery of title or possession by the prior owner of the real property. Section 38–41–103 provides, in addition, that a continuous claim of ownership under the color of a record conveyance or other instrument is "prima facie evidence of adverse possession" during the prescriptive period. Section 38–41–106 reduces the eighteen year period to seven years when the residence, occupancy, or possession of the adverse possessor is under color of title, in law or equity deducible of

record, from the State of Colorado or the United States. Section 38–41–108 recognizes the title of persons in actual possession of the lands under claim and color of title who have possessed the lands and paid taxes on the property for seven years. To the same effect is section 38–41–109, applicable to vacant and unoccupied land.

■ Missing from the private prescription statutes is the requirement of section 43–2–201(1) that the claimant of a public road prescriptive right must demonstrate a claim of right and use adverse to the landowner for the twenty year prescriptive period. As set forth in our case law, the requirements of section 43–2–201(1)(c) are: (1) members of the public must have used the road under a claim of right and in a manner adverse to the landowner's property interest; (2) the public must have used the road without interruption for the statutory period of twenty years; and (3) the landowner must have had actual knowledge of the public's use of the road and made no objection to such use. *Board of County Comm'rs v. Flickinger*, 687 P.2d 975, 980 (Colo.1984).

■ In contrast, a private prescriptive easement is established when the use is: "(1) open or notorious; (2) continued without effective interruption for [eighteen years]; and (3) the use was either (a) adverse or (b) pursuant to an attempted, but ineffective grant." *Lobato v. Taylor*, 71 P.3d 938, 950 (Colo.2002).

The Restatement (Third) of Property: Servitudes § 2.18 cmt. f (2002) recognizes that although, in general, the requirements for a public prescriptive easement are the same as those for a private easement, some states do require a governmental body to assert some claim of ownership through acts of maintenance or otherwise. As shown by

our case law construing section 43–2–201(1)(c), Colorado is one of these states.

In conducting our analysis, we turn first to what constitutes a public road; then we examine the claim of right requirement that must accompany the public's adverse use in order for a public road to exist by prescription.

### B. What Is A Road Under Section 43–2–201(1)(c)?

We first address what constitutes a "road" for purposes of public prescription under section 43–2–201(1)(c).[2] In *Simon v. Pettit*, 687 P.2d 1299 (Colo.1984), the claimed public "roads" were two "narrow but well-defined footpaths" across private property that members of the public had used for recreational access for the twenty year statutory period. *Id.* at 1300. Our previous decision in *Hale v. Sullivan*, 146 Colo. 512, 362 P.2d 402 (1961), provided for a broad definition of "road." In *Simon* we adopted a more restrictive definition.

We held that the legislature did not intend the synonymous terms "road" or "public highway" in section 43–2–201(1)(c) to include all footpaths in Colorado used adversely to the landowner by members of the public for twenty years or more. However, the legislature did intend that the courts consider the characteristics, conditions, and locations of the ways in applying the statute. *Simon*, 687 P.2d at 1302–03.

We concluded that the public entity responsible for maintaining public roads in the jurisdiction must take some action, formal or informal, indicating its intention to treat the right of way as a public road. *Id.* at 1303 (citing *Kratina v. Board of County Comm'rs*, 219 Kan. 499, 548 P.2d 1232 (1976)).

**2.** Section 43–2–201(1)(c) provides that "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years" are public highways. Read in context with the other provisions of section 43–2–201(1), subsection (1)(c) requires some form of "action or knowing inaction by the appropriate governmental body" for a public right. *Simon v. Pettit*, 687 P.2d 1299, 1303 (Colo.1984). Title 43 addresses transportation; Article 2 addresses

state, county, and municipal highways; and Part 2 addresses county and other public highways. It is within this part that the public prescription statute is codified; therefore, it follows that any "road," as contemplated in the statute, must meet the definition of a county or other public highway. Since Part 2 does not contain a definitional section, we turn to our case law for the definition of "road" for the purposes of the public prescriptive right statute.

Our reliance in *Simon* on the Kansas Supreme Court decision in *Kratina* is highly significant to the case before us. The Kansas Supreme Court emphasized that "mere use by the traveling public is ambiguous" as to whether the use was with landowner permission or not. On the other hand, "where public officials take some positive action, either formally or informally, such as improving or maintaining the road, the intention of the public at least is unmistakable." *Kratina,* 219 Kan. at 504–05, 548 P.2d at 1237. "When a road is worked by public authorities the owner is chargeable with the knowledge that they do so under a claim of right." *Id.* at 505, 548 P.2d at 1237.

Due to the lack of any positive action by the claiming county or township that demonstrated a claim of right, the Kansas Supreme Court ruled that there could be no public road by prescription:

> In any event, the court is satisfied that the rule adopted here is the more equitable one, and will resolve the difficulties inherent in attempting to determine the intent of a landowner and of the public on the basis of ambiguous acts alone. The cases just cited and others, to the extent that they support the establishment of a public road based on public travel alone, and dispense with any action by public authorities, are disapproved.

> In this case there was never any recognition, formal or informal, of the disputed road by any public body. Under the rule just announced there could be no public road by prescription.

*Id.* at 506–07, 548 P.2d at 1238.

When explicating section 43–2–201(1)(c), we adopted and applied the *Kratina* claim of right rule in *Flickinger* and *Simon.* In *Simon,* we recognized that a footpath might qualify as a public road in the jurisdiction if it were included on the government's map of its road system. We assumed that an action of the public entity, such as placing the footpath on a city map for the requisite twenty

year prescription period, coupled with use by the public for that period, would meet both the claim of right and the adversity requirements for a prescriptive public road within the meaning of section 43–2–201(1)(c). *Simon,* 687 P.2d at 1303. Nevertheless, because there was no evidence that the City of Boulder even knew the paths existed, much less maintained them or in any way accepted them as public streets, we held that the claimants had not met their burden of proving a claim of right pursuant to section 43–2–201(1)(c).

Our reasoning and holding in *Simon* recognizes that section 43–2–201(1)(c) appears in the statutory provisions pertaining to the acquisition, funding, and maintenance of state, county, and city roads and road systems. Under these provisions, a county, for example, may obtain a public road by (1) express or implied dedication of the road to the public by the property owner, section 43–2–201(1)(a),(b); (2) purchase of a right-of-way, section 43–2–204; (3) condemnation and payment of just compensation for the property interest necessary for the road, sections 43–2–112 and 43–2–204; or (4) prescription, section 43–2–201(1)(c). As we discuss in more detail below, to proceed by the fourth means, the public entity must establish its claim of right by some overt action that puts the landowner on notice that it intends to include the public way within its road system; only then can the public way be considered a "road" or "public highway," thus beginning the prescriptive period under section 43–2–201(1)(c).

## C. Requirements for Obtaining a Public Road by Prescription

■ The claimant of a prescriptive right for a public road across private property has the burden of proving compliance with the requirements for such a right by a preponderance of the evidence.[3] In *Board of County Comm'rs v. Flickinger,* 687 P.2d 975 (Colo.

---

[3]. In 1984, when we decided *Flickinger,* the standard of proof in adverse possession cases was by clear and convincing evidence. *See Flickinger,* 687 P.2d at 981 n. 7; *Board of County Comm'rs v. Masden,* 153 Colo. 247, 385 P.2d 601 (1963) (holding that public entity had to prove existence

of public road by prescription by clear and convincing evidence). However, in *Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989) we overruled the clear and convincing language in *Masden,* and held that a standard of preponderance of the evidence applies to adverse possession cases.

1984), we construed section 43–2–201(1)(c) to require the claimant to meet a three-part test for the establishment of a public road by prescription:

> (1) members of the public must have used the road under a claim of right *and* in a manner adverse to the landowner's property interest;
>
> (2) the public must have used the road without interruption for the statutory period of twenty years; and
>
> (3) the landowner must have had actual or implied knowledge of the public's use of the road and made no objection to such use.

*Id.* at 980 (emphasis added). The first part includes both adversity and claim of right.

*Flickinger* presented a factual situation very different from the case before us now. In 1953, the county included the road as part of the county road system.[4] After proper notifications and hearings, the Board adopted the map as the official map of the Saguache County road system. Because the road was now included in the county road system, it became eligible for state maintenance funds and Saguache County began receiving funds in order to maintain the road. *Id.* at 978–79.

During the 1960s and 1970s, county employees graded the road using county equipment several times. Additionally, the county installed two culverts under the road in 1953, and cleared snow from the road at the request of local ranchers. The Flickingers were always aware that the public used the road for recreational purposes and that governmental employees used it to access adjacent federal land. The Flickingers knew that public employees were keeping the road in good repair. Some users sought the Flickingers' permission to use the road; most did not. *Id.* at 979–80.

Occasionally the Flickingers had to tell users to leave their property if they camped on it or left trash, but they never interfered with the use of the road until 1977. In 1977, because of concerns about the increasing number of people crossing their property via the road, the Flickingers locked an existing gate. In 1978 the Department of Highways struck the road from the public highway inventory and ceased contributing payment of funds to Saguache County to maintain the road. *Id.* at 979.

Saguache County then sought an injunction barring the Flickingers from locking the gate to prohibit public access to the road. Ruling that the road was indeed a public road by prescription, the trial court issued the requested injunction. *Id.* at 980. We affirmed under section 43–2–201(1)(c), holding that this section codifies the common law method by which the public can obtain a property interest for a public road by prescription. We identified the requirements necessary for such an acquisition: the public must have used the road: (1) under a claim of right and in a manner adverse to the landowner's property interest; (2) without interruption for the statutory period of twenty years; and (3) the landowner had actual or implied knowledge of the public's use and did not object to such use. We added that when a claimant shows that the use has continued for the prescriptive period of time, the claimant is afforded a presumption that the use was adverse.[5] *Id.*

The Flickingers argued that the gate at the foot of the road prevented the public from establishing the requirement of adversity, despite the fact that they had never locked the gate until 1977. We concluded that "the placement of the gate does not conclusively establish the character of the public use as permissive and nonadverse. A gate, in other words, may be erected for purposes other than obstruction of public travel." *Id.* at 981. The evidence in *Flickinger* showed that the primary purpose of the gate was to benefit a rancher who used the Flickinger's property as pasture for his

---

4. Prior to 1924, the road existed as a "wagon" road, consisting of just two dirt tracks. In 1924, the road was converted to a dirt road in order to allow vehicular access. *Flickinger,* 687 P.2d at 978 n. 2.

5. To the extent that our holding in *Shively v. Board of County Comm'rs,* 159 Colo. 353, 411

P.2d 782 (1966) merges the statutory prescriptive period and the claim of right requirements into a test that requires only a showing of public use for a twenty year period, we overrule that case as contrary to our decision in *Flickinger.*

livestock. Additionally, since the Flickingers had never made any attempt to lock the public from their property prior to 1977, we concluded that the purpose of the gate was to keep livestock away from a nearby highway, not to keep the public off of the Flickingers' land. *Id.*

We held that sufficient evidence existed to find that the public had used the Flickingers' road "under a claim of right and in a manner adverse to [their] property interests" since at least 1953. *Id.* at 980. The evidence showed that the county asserted the public character of the road when it incorporated it into the county road system. In addition: (1) the county received state funds to maintain the road; (2) the public continuously entered the property and used the road for recreational purposes as well as to access adjacent lands; and (3) the Flickingers had "actual knowledge of the public use of the road and generally acquiesced in it." *Id.* at 981. Hence, both the requirement of adversity and the requirement of a claim of right were met in regard to a prescriptive right for a public road on Flickingers' property.

### D. No Road Prescriptive Right in this Case

Although the route across the McIntyre property once supported vehicular travel on a tramway route from five to eight feet in width, in some places, to twelve to fifteen feet in width, in other places, the use the public made of this route during the statutory twenty year period was for a footpath. A scrap marble heap from previous marble quarrying operations along the route requires walkers to "scramble" over the pile; other obstacles to vehicular travel exist, such as fences and posts.

Because the public's use during the statutory twenty year period was for a footpath, our decision in *Simon* is particularly pertinent. Gunnison County must have taken some overt claim of right action, formal or informal, giving notice to the landowner of the public's claim of right and demonstrating that it considered the footpath across the McIntyre land to be a public road, for example, by performing maintenance or including the footpath on its county road system dur-

ing the prescriptive period. *Simon v. Pettit,* 687 P.2d 1299, 1303 (Colo.1984).

The only evidence of maintenance by a public entity in the record before the trial court was that the Colorado Division of Mined Land Reclamation had entered the McIntyre property to build a boardwalk over a washed out section of the route to the old marble quarry site for safety purposes. This entry occurred by written permission of the McIntyres' predecessor in interest, with the agreement expressly providing that the landowner waived no rights by granting access permission to the State.

In the absence of any overt action by Gunnison County indicating its intention to treat the footpath along the old tramway route as a public road, the trial court and the court of appeals erred by conflating the adversity and claim of right requirements for establishment of a public road by prescription pursuant to section 43–2–201(1)(c) into a single criteria of public use for the twenty year statutory period. Neither court applied all of the *Flickinger* requirements; in particular, the claim of right requirement. They examined only the adversity requirement.

But, our contemporary case law contains a restrictive reading of section 43–2–201(1)(c), requiring twenty year use by the public of a road in a manner adverse to the landowner and under a public claim of right. In Colorado, two parallel lines of cases have developed from our courts. One line of cases addresses the requirement of adversity. The other line addresses claim of right. This claim of right must be supported by evidence of an overt act or acts that put the landowner on notice of the public's claim of right to a road across the property. We now discuss both requirements but preface our analysis with a discussion about the dedication cases.

### 1. Dedication and Adverse Possession Distinguished

We first addressed public prescriptive rights in *Starr v. People,* 17 Colo. 458, 30 P. 64 (1892). In *Starr,* the question was whether the road at issue was a public highway at the time the action was instituted. *Id.* at 459, 30 P. at 65. We addressed two alterna-

tive theories: dedication and adverse possession. *Id.* Depending on the facts of the particular case, several factors could raise an implication of dedication on the landowner's part, including the fact that the public had used the road for a considerable length of time without objection by the landowner.

> Use of the road by the public for a considerable length of time without objection by the owner of the land may increase the weight of the evidence, if any there be, arising from acts or declarations of the owner indicating his intent to dedicate. But mere use, without such acts or declarations, unless for a period of time corresponding to the statutory limitation of real actions, cannot be held sufficient to vest the easement in the public, as by prescription.

*Id.* at 460, 30 P. at 65. At that time we indicated that use by the public for the statutory time was itself sufficient to create a public prescriptive right.

We revisited the issue of dedication and implied dedication in *Mitchell v. City of Denver*, 33 Colo. 37, 78 P. 686 (1904). There, we reiterated that, in order for a private road to become a public highway by dedication, the landowner must manifest some intent for that outcome. We left room for a future case involving adverse possession. We concluded that the evidence in *Mitchell* fell short of establishing a dedication or a prescriptive easement because the facts did not show either acquiescence by the landowner or adverse possession.

> That the city of Denver, or some of its constituent municipal corporations, six or seven years before the trial graded this street, put up signposts at the intersection of the adjoining streets, and placed thereon the names thereof, is not, under the facts, sufficient evidence of acquiescence by the owners in this alleged assertion of public ownership, or sufficient to make out an ownership arising from adverse possession.

*Id.* at 40, 78 P. at 687.

We next addressed the issue in *Lieber v. People*, 33 Colo. 493, 81 P. 270 (1905). Here,

we repeated the rules of dedication set forth in *Starr* and *Mitchell,* but—because of a factual dispute as to whether the road the claimants sought actually crossed the land in question—we did not reach a conclusion regarding the requirements for creating a public road on private property. *Id.* We simply observed that the evidence must show, with reasonable certainty, that public travel occurred on the land in controversy. *Id.* at 498, 81 P. at 271.

### 2. Adversity and Claim of Right

In 1931, we formally recognized that the public must make some public claim of right in order to establish a prescriptive easement.[6] *Mayer v. San Luis Valley Land & Cattle Co.*, 90 Colo. 23, 26, 5 P.2d 873, 874 (1931). However, we did not fully address this requirement until 1984 when we discussed public prescriptive rights generally in *Simon v. Pettit*, 687 P.2d 1299 (Colo.1984). In order to satisfy the requirements of section 43–2–201(1)(c), the public must use a road "adversely, under a claim of right, and without interruption for the statutory period of twenty years, and the landowner knows of but does not object to the use." *Id.* at 1302. This quote appears before we began discussing the definition of a "road" in *Simon.* At that point in the opinion, we were first explaining the necessary elements for a public prescriptive right. *Simon* was published a week after *Flickinger.* As demonstrated by the commas in between the phrases, we clearly intended that adversity and claim of right constitute separate requirements for a public prescriptive right. We held that public maintenance of the road, or the inclusion of the road on a public road system map, would serve as strong evidence in favor of a public prescriptive right. *Id.* at 1303.

Prior to the case now before us, the court of appeals has addressed the claim of right requirement as well as the adversity requirement. *See Littlefield v. Bamberger*, 32 P.3d 615 (Colo.App.2001). In *Littlefield*, the court

---

6. We attach, as Appendix A, a survey of cases decided in other jurisdictions regarding the re-

quirements for a public prescriptive right.

of appeals recognized that a county's use and maintenance of a mail delivery route might qualify for a prescriptive easement, but upheld the trial court's determination that the evidence in the case did not support this conclusion. *Id.* at 620. In *Alexander v. McClellan,* 56 P.3d 102 (Colo.App.2002), the court of appeals affirmed the trial court order finding a public prescriptive right in the road at issue. *Id.* at 105. In support of its holding, the court of appeals cited to evidence showing continuous public use and maintenance of the road for at least the statutory twenty year prescriptive period.

> Several witnesses testified to the public's continuous use of [the road] and the [public] maintenance of it for over twenty years. [The landowner] even testified that he was aware of traffic on [the road]; he admitted that, prior to acquiring the disputed property, he saw approximately ten cars per week, in addition to regular school bus traffic, using [the road].

*Id.* at 104.

In *Board of County Comm'rs v. Kobobel,* 74 P.3d 401 (Colo.App.2002), the claimants presented very little evidence of public use of the road, and no evidence of a public claim of right, therefore, no public road by prescription existed. *Id.* at 404–05. In *State v. Cyphers,* 74 P.3d 447 (Colo.App.2003), the court of appeals addressed both the issue of adversity and claim of right. Affirming the trial court's holding in favor of a public prescriptive right, the court of appeals deferred to the trial court's findings of fact of continuous public use and public use of the road without the landowner's permission. *Id.*

In *Board of County Comm'rs v. W.H.I., Inc.,* 992 F.2d 1061 (10th Cir.1993), the Tenth Circuit focused on whether the public had acquired a prescriptive right to a road pursuant to section 43–2–201(1)(c). Although the record was sparse on the issue, evidence did exist that the public used the road for the requisite period of time. *Id.* at 1065. The evidence also showed that the Board of County Commissioners had enacted a resolution declaring an intention to claim the road as a public road. The prescriptive period began, so the court ruled, when the Board passed its resolution. *Id.* at 1066. Although

the resolution was improperly recorded, the court held the landowner to this notice of a public claim. *Id.* ("Section 43–2–201(1)(c) does not require that public use be based on color of title or properly recorded resolutions. The [resolution served] to illustrate notice of adverse, open, and notorious use by the public.").

■ While a public claim of right is a separate and necessary requirement for establishing a public prescriptive right to a road, the claim of right requirement is integrally intertwined with the adversity requirement. Sporadic use of the road is not enough to establish adversity or put the property owner on notice of a public claim of right. *Turner v. Anderson,* 130 Colo. 275, 274 P.2d 972 (1954). In *Turner,* we held that occasional use of the road by members of the public did not rise to the level of a prescriptive right. *Id.* at 278–79, 274 P.2d at 974 ("a prescriptive right to the use of [a] road … was not established by the evidence, because the use of said road was irregular, infrequent, sporadic, and far more permissive than adverse.").

■ While evidence of a fence or gate on the road gives rise to a strong indication that any public use of the road is permissive, their existence does not provide the landowner with a conclusive presumption that the use is permissive. In *Mayer v. San Luis Valley Land & Cattle Co.,* 90 Colo. 23, 5 P.2d 873 (1931), the landowners kept unlocked gates on the road at issue. When the landowners eventually locked the gates, the claimant brought an action seeking to have the road declared a public highway pursuant to section 43–2–201(1)(c). *Id.* at 24–26, 5 P.2d at 874–75. We observed that mere proof of public use of the land for the statutory period does not rise to the level of a prescriptive right. *Id.* at 26, 5 P.2d at 875. Addressing the requirement of adversity, we held that obstructing free travel with gates or fences will ordinarily prevent the public from acquiring a highway by prescription. *Id.* By constructing a gate across a road, a landowner conveys the clear message that any public use of that road is with the landowner's permission only; and the public's use is not adverse.

In *Martino v. Fleenor*, 148 Colo. 136, 365 P.2d 247 (1961), we addressed the requirement of adversity and plainly held that public use for the prescriptive period is not alone sufficient to establish a public prescriptive right. Claimants, their relatives, friends, employees, and southern neighbors had used the road for more than forty-two years without the objection of the landowners. Because the landowners placed three wire gates across the road, thus obstructing travel, rendering the use permissive only, no public prescriptive right was established. *Id.* at 141–42, 365 P.2d at 250.

Similarly, in *Lang v. Jones*, 191 Colo. 313, 552 P.2d 497 (1976), the road was consistently blocked by a gate, although the gate was not locked. *Id.* at 315, 552 P.2d at 499. The public's access was permissive because where gates obstruct free travel along the road, even if the gates are unlocked, the use of the road is not adverse. *Id.* Nevertheless, in *Flickinger*, we said that the existence of a gate did not give rise to a conclusive presumption of permissive use. There, the landowners used the gate to keep livestock in, rather than to keep the public out. *Board of County Comm'rs v. Flickinger*, 687 P.2d 975, 981 (Colo.1984).

In *Walter v. Hall*, 940 P.2d 991 (Colo.App. 1996), the court of appeals followed our reasoning in *Flickinger* that evidence of a gate is not conclusive evidence that use was only permissive. *Id.* at 995. Similarly, in *Littlefield v. Bamberger*, 32 P.3d 615 (Colo.App. 2001), the court of appeals again held that evidence of a fence, in and of itself, does not necessarily prove permissive use. *Id.* at 620.

### 3. Statutory Public Policy

■ In reviewing the case before us, we also look to the statutory public policy. The legislative intent of section 43–2–201(1)(c) is that the establishment of a public road by prescription is a narrow alternative to the other available means a public entity has for establishing a road, which include: (1) express or implied dedication of the road to the public by the property owner; (2) purchase of a right-of-way by the public entity; or (3) condemnation and payment of just compensation for the property interest necessary for the road.

■ The General Assembly has encouraged landowners to allow public use of their land; in turn, it has guarded against landowners losing their property rights when allowing such use. *See* § 33–41–103, 9 C.R.S. (2003) (limiting landowner liability for public use of private land). The vacant land exception also demonstrates this legislative policy, as we discussed in *Simon*. Travel over vacant land is deemed permissive and cannot serve as the predicate for a prescriptive right:

> Where the land is vacant and unoccupied and remains free to public use and travel until circumstances induce the owner to enclose it, the mere travel across it, without objection from the owners, does not enable the public to acquire a public road or highway over the same. Such use by the public of vacant and unoccupied land by travel over it, even after the period of twenty years, is regarded merely as a permissive use.

*Simon v. Pettit*, 687 P.2d 1299, 1301 (Colo. 1984). *See also* § 18–4–201(3), 6 C.R.S. (2003); *People v. Schafer*, 946 P.2d 938, 942 (Colo.1997).

The trial court and court of appeals rulings in the case now before us, if upheld, would have the effect—contrary to Colorado public policy—of discouraging private landowners from allowing: (1) the public to cross their land for recreational purposes to reach other private or public lands; and (2) without this use causing adverse consequences to the property interests and title of the landowner.

■ Consistent with this statutory policy, the public entity claim of right requirement under section 43–2–201(1)(c), recognized in *Simon* and *Flickinger*, establishes a restrictive statutory policy towards public prescriptive road claims. The public entity claimant must establish the public's adverse use for the twenty year prescriptive period and take some overt action or actions that give the property owner notice of the public's claim of right in order for the prescriptive period to commence running under section 43–2–201(1)(c). The strongest indicator of a

county's claim of right is the inclusion of the road on the county road system and the expenditure of public funds for maintaining the road.[7]

 Accordingly, on the claim of right issue, the claimant must provide evidence that a reasonably diligent landowner would have had notice of the public's claim of right to the road. The evidence must include some overt act on the part of the public entity responsible for roads in the jurisdiction that it considers the road a public road. This notification commences the prescriptive period; without it, the prescriptive period never begins.

An overt act sufficient to provide notice of the public claim of right could include any number of actions. In a state such as Colorado, where snowfall is a frequent occurrence, plowing roads might constitute an overt act. Including a road on a public road system map, using the road for mail delivery or school buses, expending public funds for the maintenance or improvement of the road, posting signage indicating a public road, or installing drainage systems for the road could each be an act putting the landowner on notice of the public's claim of right to the road. As with the other requirements for establishing a public road by prescription, the public entity has the burden of proof by a preponderance of the evidence to demonstrate that it considered the way across the private property a public road.

In the case before us, the only evidence of any public claim of right to access across the McIntyre property is that the Colorado Department of Mined Land Reclamation entered the property to construct a boardwalk over a washed out section of the trail for safety purposes. But this work occurred with the property owner's permission under an agreement between the State of Colorado and the property owner.

The uncontested facts of record on summary judgment do not demonstrate Gunnison County's claim of right for a public road on the McIntyre property that commenced the running of the twenty year prescriptive period; thus, the trial court erred in ruling that the prescriptive period had run against these property owners. The trial court's summary judgment order and quiet title decree in favor of Gunnison County must be vacated in regard to the McIntyre property. Because no other property owner appears to contest the trial court's quiet title decree in favor of the County, we presume that these claims were settled in favor of the County, or that the other private property owners impliedly dedicated the old tramway right-of-way across their property to the County.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

Justice MARTINEZ dissents, and Chief Justice MULLARKEY joins in the dissent.

### *APPENDIX A*

We have surveyed the case law from the highest courts of many states and found that

---

7. Many of the states surrounding Colorado have definitively addressed this issue. Specifically, Idaho has required that the board of commissioners lay out and record a road in order to establish a public highway. *Cox v. Cox*, 84 Idaho 513, 373 P.2d 929 (1962). Kansas requires some official action, either formal or informal, and cites maintenance or improvement of a road as a strong indicator that the public has gained a prescriptive right. *Kratina v. Board of County Comm'rs*, 219 Kan. 499, 548 P.2d 1232 (1976). Very recently, the Montana Supreme Court held that the public had acquired a prescriptive right where public funds had been expended for the maintenance of the road. *Smith v. Russell*, 318 Mont. 336, 80 P.3d 431 (2003). New Mexico recognizes public maintenance of a road as evidence that the public has established a prescriptive right. *Board of County Comm'rs v. Friendly Haven Ranch Co.*, 32 N.M. 342, 257 P. 998 (1927). Last year, the Wyoming Supreme Court held that a claimant must "bring home" notice of an adverse claim to a landowner, simply providing evidence that the landowners were aware of the public's use and could see the road from their home did not suffice to establish a prescriptive right. *Yeager v. Forbes*, 78 P.3d 241, 256 (Wyo.2003). Moreover, both Illinois and Missouri, from whom we have adopted constitutional provisions, are in accord with the requirement of a public claim of right. *See Swinford v. Roper*, 389 Ill. 340, 59 N.E.2d 863 (1945); *O'Connell v. Chicago Terminal Transfer R.R. Co.*, 184 Ill. 308, 56 N.E. 355 (1900); *Terry v. City of Independence*, 388 S.W.2d 769 (Mo.1965).

cases differ regarding the requirements for a public prescriptive right.

In the following cases the courts required only a showing of adversity.

*Carter v. Walker,* 186 Ala. 140, 65 So. 170 (1914) (recognizing that continuous adverse use by the public is sufficient to establish a prescriptive right).

*Spindler v. Toomey,* 232 Ind. 328, 331, 111 N.E.2d 715, 716 (1953) ("if the roadway here in question is free and common to all who have occasion to use it, and it has been so used for a period of twenty years or more, it is a public highway by statute.").

*Mahoney v. Town of Canterbury,* [150 N.H. 148] 834 A.2d 227 (N.H.2003) (requiring only adversity requirement to establish a public prescriptive right).

*Earle v. Poat,* 63 S.C. 439, 41 S.E. 525 (1902) (reasoning that because all landowners hold their land subject to the right of the state to take some of that land for a road, public use may create a presumption of a public claim of right).

*Gore v. Blanchard,* 96 Vt. 234, 118 A. 888 (1922) (recognizing general rule that if use is open and notorious, it will be presumed adverse and under a claim of right).

The cases we find applicable here, based on our discussion in *Simon* and *Flickinger,* include both adverse use by the public and a public entity claim of right.

*Nelms v. Steelhammer,* 225 Ark. 429, 283 S.W.2d 118 (1955) (requiring public claim of right but allowing for slight deviation in path of travel in certain circumstances).

*Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962) (requiring board of commissioners to lay out and record road in order to establish a public prescriptive right).

*Swinford v. Roper,* 389 Ill. 340, 59 N.E.2d 863 (1945) (requiring both adversity and claim of right and noting that public maintenance is a strong indicator of a claim of right).

*O'Connell v. Chicago Terminal Transfer R.R. Co.,* 184 Ill. 308, 56 N.E. 355 (1900) (evidence of public maintenance on land tend-

ed to show establishment of public prescriptive right although was not conclusive).

*Kratina v. Board of County Comm'rs,* 219 Kan. 499, 548 P.2d 1232 (1976) (public must take some official action, either formal or informal, such as maintaining or improving road in order to establish a public prescriptive right).

*Cummings v. Fleming County Sportsmen's Club, Inc.,* 477 S.W.2d 163, 167 (Ky.1972) (public use must be "so manifest as to afford notice to an ordinarily prudent owner.").

*Downing v. Benedict,* 147 Ky. 8, 143 S.W. 756 (1912) (requiring exercise of public authority in order to establish public prescriptive right).

*Comber v. Plantation of Dennistown,* 398 A.2d 376 (Me.1979) (claim of right is necessary to establish a public prescriptive right but sporadic instances of public maintenance will not serve to create such right).

*Mackenna v. Town of Searsmont,* 349 A.2d 760 (Me.1976) (although public claim of right is required to establish public prescriptive right, road need not be formally dedicated or laid out).

*Sprow v. Boston & A.R. Co.,* 163 Mass. 330, 39 N.E. 1024 (1895) (public must show that landowner had knowledge or reason to believe that public used the road under a claim of right).

*Bain v. Fry,* 352 Mich. 299, 89 N.W.2d 485 (1958) (use must be so open, hostile and notorious as to provide notice to the landowner that title to the land is denied).

*Trowbridge v. Van Wagoner,* 296 Mich. 587, 296 N.W. 689 (1941) (public use must be accompanied by some act by public authorities sufficient to give landowner notice that title to the land is denied).

*South Branch Ranch Co. v. Emery,* 191 Mich. 188, 157 N.W. 419 (1916) (mere use by public will not establish a public prescriptive right, some act of public control is necessary).

*Ladner v. Board of Supervisors,* 793 So.2d 637, 639 (Miss.2001) (public must show "exertion of dominion over the roadway in question.").

*Armstrong v. Itawamba County,* 195 Miss. 802, 16 So.2d 752 (1944) (public authorities must exercise jurisdiction over the road, such as overseeing its upkeep at public expense).

*Wills v. Reid,* 86 Miss. 446, 38 So. 793 (1905) (some expenditure of public moneys or exercise of public power over a road is necessary in order to establish a public prescriptive right).

*Terry v. City of Independence,* 388 S.W.2d 769 (Mo.1965) (where city took possession of public area, graded it, oiled it, expended public funds in maintaining it and exercised dominion over it, public acquired prescriptive right).

*Smith v. Russell,* [318 Mont. 336] 80 P.3d 431 (Mont.2003) (public acquired prescriptive right where public funds had been expended for maintenance of the road).

*Swandal Ranch Co. v. Hunt,* [276 Mont. 229] 915 P.2d 840 (Mont.1996) (evidence that county commissioner had declared a road on landowner's ranch supported a finding that the landowner had knowledge of the county's adverse claim to the road).

*Board of County Comm'rs v. Friendly Haven Ranch Co.,* 32 N.M. 342, 257 P. 998 (1927) (recognizing public maintenance of road as evidence that public has gained a prescriptive right).

*Speir v. Town of New Utrecht,* 121 N.Y. 420, 24 N.E. 692 (1890) (requiring proof that public authorities in some way recognized, kept in repair, or adopted road in order for it to become a public road by prescription).

*Doyle Milling Co. v. Georgia–Pacific Corp.,* 256 Or. 271, 473 P.2d 135 (1970) (public use must adequately apprise landowner of nature of public claim of right so landowner knows a public servitude will burden the land unless the landowner takes proper action to prevent it).

*Donohugh v. Lister,* 205 Pa. 464, 55 A. 23 (1903) (where public authority had paved and repaved road several times, public acquired prescriptive right even though landowner had paid for curbing of road).

*Scheller v. Pierce County,* 55 Wash. 298, 104 P. 277 (1909) (where county, at times, refused to expend money on road and landowners at all times paid taxes on property, public prescriptive right did not arise).

*Cramer v. Dep't of Highways,* 180 W.Va. 97, 375 S.E.2d 568 (1988) (requiring adverse use as well as official recognition that road is public, which could include public maintenance or an order of recognition).

*Boyd v. Woolwine,* 40 W.Va. 282, 21 S.E. 1020 (1895) (in order to constitute public road, county court must have accepted or in some way recognized such road).

*Witter v. Damitz,* 81 Wis. 385, 51 N.W. 575 (1892) (public construction and maintenance of a highway for statutory period of time constituted a public highway by prescription).

*Yeager v. Forbes,* 78 P.3d 241, 256 (Wyo. 2003) (claimants must "bring home" notice of adverse claim to landowners).

*Board of Comm'rs v. Patrick,* 18 Wyo. 130, 107 P. 748 (1910) (public authority must assume some sort of control or jurisdiction over a road in order for it to become a public road by prescription).

Justice MARTINEZ dissenting:

## I.

I find two grave errors in the majority analysis which cause me to dissent. First, and most troublesome, is the majority's insertion of an additional requirement into the test for prescription of a public highway. Second, the majority conflates the test for whether a road is established by adverse possession with the determination of whether the route is a road in the first instance. I cannot agree with the majority's decision to add an additional requirement of government action to the test for prescription given the fact that the legislature has not changed the statute in over one hundred years. Furthermore, I find that the majority's analysis of the threshold question of whether a particular route is a road under the prescription statute incorrectly includes elements of prescription. I respectfully dissent.

## II.

The General Assembly enacted the section under which this case arises in 1893. Ch.

147, sec. I, 1893 Colo. Sess. Laws 435. The legislature has not changed the law since that time. "The following are declared to be public highways ... (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years." § 43–2–201(1)(c), 11 C.R.S. (2003). This section codified the common law and definitively established that all roads on private lands that have been used adversely for more than twenty years, without interruption or objection by the owner, become public highways. *Bd. of County Comm'rs v. Flickinger,* 687 P.2d 975, 980 (Colo.1984).

We have interpreted this section in our previous cases and have held that a party seeking to establish a road across private property as a public highway must demonstrate:

> (1) members of the public must have used the road under a claim of right and in a manner adverse to the landowner's property interest;
> (2) the public must have used the road without interruption for the statutory period of twenty years; and
> (3) the landowner must have had actual or implied knowledge of the public's use of the road and made no objection to such use.

*Id.* Thus, our case law merely outlines what the statute dictates: there must be adverse, uninterrupted use for twenty years, with the owner's knowledge.

I disagree with the majority's analysis and application of this test because the majority attempts to separate our requirement that the use must be "under a claim of right and in a manner adverse" into two distinct requirements. As I do not find that we have ever stated that use under a claim of right is any different than adverse use, I cannot agree with the majority's analysis. Moreover, the majority's further assertion that this additional requirement applies only to public entities is untenable. I find the majority's departure from our previous case law, despite the fact that legislature has not changed the statute in over one hundred years, an exercise of authority more properly left to the General Assembly.

First, the terms "use under a claim of right" and "adverse use" are synonymous. The majority contends that we have developed "two parallel lines of cases," one which addresses "claim of right" and the other which addresses "adversity". Maj. Op. at 410. However, the more obvious reading of our previous cases is that we have used the term "claim of right" only as explanation of, and thus synonymously with, the term "adverse use." For example, in *Lieber v. People,* 33 Colo. 493, 499, 81 P. 270, 271 (1905), we stated that to give a road a public character the use under section 43–2–201(1)(c) must have been "adverse (that is, under a claim of right)." *See also Mayer v. San Luis Valley Land & Cattle Co.,* 90 Colo. 23, 26, 5 P.2d 873, 875 (1931). Thus, both of these terms characterize the type of use that is required before a claim of prescription can be established: the use must be hostile to the owner's rights.

The case law in Colorado illustrates that we have used these terms synonymously to describe the single requirement of adverse use by the public. In *State v. Cyphers,* 74 P.3d 447 (Colo.App.2003), for example, the court of appeals found that ranchers', hunters', sightseers', and oil explorers' use of the road supported a finding of adverse use. The court did not require a claim of right by any public entity, pointing out that "[i]t is not necessary that a governmental subdivision maintain the road to retain its status as a public highway." *Id.* at 450. Thus, the court of appeals clearly did not require anything more than adverse use by the public to establish a public highway by prescription. Similarly, in *Littlefield v. Bamberger,* 32 P.3d 615, 620 (Colo.App.2001), the court of appeals held that a prescriptive right had not been established because there was not adverse use by the public. The court concluded that the use was "sporadic in nature, rather than part of a pattern of general public use." *Id.* The court made no mention of a requirement that the county had to make some overt act evidencing that the use was under a claim of right, holding only that there was not a sufficient showing of adverse use. *Id.* The court of appeals has used the term "claim of right" in place of adverse use. *Bd. of County*

*Comm'rs v. Kobobel,* 74 P.3d 401, 405 (Colo. App.2002). However, in that case the court found only that the public's use was not over the length of the entire road and therefore a public highway was not established. *Id.* The court never considered the lack of any action by a public entity thus illustrating that the court was merely using the terms adverse use and use under a claim of right interchangeably. These cases confirm that although the facts in some cases involve action by a public entity, we have never held that such public action is a separate or additional requirement. Such action serves merely as evidence illustrating adverse use. In sum, we have required only that the use, whether by the general public or a public entity, be adverse to the landowner's interest.

We have further defined adverse use as "actual, visible, exclusive, hostile." *Mayer,* 90 Colo. at 26, 5 P.2d at 875. This definition is consistent with both the definitions of "adverse use" and "claim of right" stated in Black's Law Dictionary. "Adverse use" is defined as "use without license or permission." Black's Law Dictionary 53 (6th ed.1990). "Adverse" is defined further with specific regard to use of land: use of land is "adverse, as against owner, if it is not made in subordination to him, is open and notorious." *Id.* The "claim of right doctrine," in regard to adverse possession, is defined as a claimant "in possession as owner, with intent to claim the land as his or her own, and not in recognition of or subordination to record title owner." *Id.* at 248. Both terms explain that the use must be hostile and not in subordination to the record property owner.

In short, these terms all serve to explain, and differentiate, adverse use from permissive use. This distinction is important because if the evidence shows that the use was permissive, there can be no prescriptive right. *Mayer,* 90 Colo. at 26, 5 P.2d at 874. As explained in the Restatement of Property, "claim of right" does not mean that the user must claim entitlement or title, as sometimes mistakenly asserted, but merely that the user must not behave as if no adverse use were being asserted. Restatement (Third) of Property: Servitudes § 2.16 cmt. f (2000). "Claim of right" therefore "adds little to the

requirements expressed by the 'open or notorious' and continuity requirements." *Id.* Thus, the real question posed by the requirement that the use be adverse or under a claim of right is whether the public used the land without permission and in a manner that was hostile to the true owner. This evidence then serves to illustrate that the public was asserting its ownership over the property—the backbone of a claim of prescription. *See Bd. of County Comm'rs v. W.H.I., Inc.,* 992 F.2d 1061, 1066 (10th Cir.1993). Action by the county could certainly be part of the evidence used to show an adverse use. However, county action is not a requisite for a showing of adverse use. *See id.* (County's actions "serve only to illustrate notice of adverse, open, and notorious use by the public.").

Although recognizing that "the claim of right requirement is integrally intertwined with the adversity requirement," Maj. Op. at 412, the majority still argues that we have actually established two separate requirements for a showing of adverse use. The majority states that in *Mayer,* "we formally recognized that the public must make some public claim of right in order to establish a prescriptive easement." Maj. Op. at 411. However, in that case we stated only that the public must have used the land, "adversely under claim or color of right." *Mayer,* 90 Colo. at 26, 5 P.2d at 874. Furthermore, we went on in that case to equate the terms: the use must be adverse "that is, under a claim of right." *Id.* at 26, 5 P.2d at 875. Although *Mayer* supports the proposition that the use must be adverse to the owner, thus evidencing a claim of ownership, that case says nothing to indicate that the evidence showing adverse use would be any different from that showing a claim of right.

Bolstering the point that "claim of right" is merely another way of saying "adverse use" is our outline of the requirements to establish a public highway across private property in *Flickinger.* There we outlined three requirements. Under the first, we stated "members of the public must have used the road under a claim of right and in a manner adverse to the landowner's property interest." *Flickinger,* 687 P.2d at 980. Although

the majority points to the "and" combining claim of right and in a manner adverse in *Flickinger,* and a comma separating claim of right and adverse in *Simon v. Pettit,* 687 P.2d 1299 (Colo.1984),[1] I find more persuasive the manner in which we initially laid out those requirements in *Flickinger.* We outlined only three requirements and numbered them accordingly. Had we intended to require four elements, I believe that we would have done so, or at least noted that the three requirements included subparts. More importantly, we did not analyze the terms use under a claim of right and adverse use differently or separate them in any way. Instead, we disposed of the first prong of the test in three sentences, and we moved on to discuss the plaintiff's constitutional claims. Thus, I have trouble reaching the majority's conclusion that we have previously established more than the three elements listed in *Flickinger.*

Law in other states supports this analysis. Contrary to the majority's assertion that many cases require both adversity and a public claim of right," Maj. Op. at 414–416, Appendix A, the Restatement clearly states that a majority of states do not require governmental action to establish a public highway by prescription.[2] Restatement (Third) of Property: Servitudes § 2.18 cmt. f (2000). States that do not adopt this approach base their conclusion on statutory language requiring governmental action. For example, the Supreme Court of Idaho has recognized that adverse use and use under a claim of right are synonymous. The Idaho Supreme Court outlined its requirements which included one that the use must be "adverse and

under a claim of right." *Hodgins v. Sales,* 139 Idaho 225, 76 P.3d 969, 973 (2003). The court went on to explain that these two terms are synonymous: "adverse use, also referred to as hostile use or use under a claim of right." *Id.* at 975; *see also Williams v. Harrsch,* 297 Or. 1, 681 P.2d 119, 123 (1984) ("To establish a public roadway by prescription the use must be adverse or under a claim of right and not merely by permission of the landowner."). Although some other states have laws which require official action, these cases support nothing more than a public policy argument that such a change should be made. *See, e.g., Bd. of Comm'rs v. Friendly Haven Ranch Co.,* 32 N.M. 342, 257 P. 998, 998 (1927) (Statute defined public highways as all roads dedicated to public use or "recognized and maintained by the corporate authorities of any county."). Colorado's law does not presently include such a requirement and any change to our law is exclusively within the province of the legislature.

Second, the majority states that only public entities are subject to this additional requirement. Although the majority points to different language discussing the requirements for public and private prescriptive rights, we have never held public entities to a different standard than private individuals. For example, in *Shively v. Board of County Commissioners,* 159 Colo. 353, 357, 411 P.2d 782, 784 (1966), we analyzed the sufficiency of evidence to support the finding of use under a claim of right; we stated that there is a presumption that the use is adverse when it has been made for the prescribed

---

1. In *Flickinger,* we stated that the use must be "under a claim of right and in a manner adverse to the landowner's interest." *Flickinger,* 687 P.2d at 980. In *Simon,* which was not decided on the basis of prescriptive rights, we noted the requirements of prescription and stated that the public must use a road "adversely, under a claim of right." *Simon,* 687 P.2d at 1302. Thus, we have used both the word "and" and a comma to separate these two descriptions of adverse use.

2. States that adopt the lost-grant theory of adverse possession have trouble extending prescription to the public. *See Mihalczo v. Woodmont,* 175 Conn. 535, 400 A.2d 270, 272–73 (1978); *Kratina v. Bd. of Comm'rs,* 219 Kan. 499, 548 P.2d 1232 (1976); Restatement (Third) of Prop-

erty: Servitudes § 2.18 cmt. f (2000). The lost grant theory reasons that a landowner would not acquiesce in the use of land without expressly granting such a right. *Kratina,* 548 P.2d at 1235. However, as there can be no grant without a definite grantee, courts that adopt the lost-grant theory face the problem that the public is an indefinite grantee. Restatement (Third) of Property: Servitudes § 2.18 cmt. f (2000). Most courts have sidestepped this legal fiction and allowed a servitude for the public by finding an implied dedication to the general public. *Id.* Thus, "the majority of American courts have permitted the acquisition of servitudes by long-continued public use." *Id.*

amount of time.[3] We went on to say that the "rule is no different with respect to presumptive rights gained by the public under [section 43–2–201]." *Id.* at 357–58, 411 P.2d at 784. Thus, not only did we equate a claim of right with adverse possession, we specifically stated that the test of adversity is the same for public and private entities.

Furthermore, although our language varies in our explanation of the requirements for a prescriptive right, the substance of the requirements is the same. In the context of a private prescriptive easement, we have stated that the easement is established if the use is: "1) open or notorious, 2) continued without effective interruption for the prescriptive period, and 3) the use was either a) adverse or b) pursuant to an attempted, but ineffective grant." *Lobato v. Taylor*, 71 P.3d 938, 950 (Colo.2002) (citing, e.g., Restatement (Third) Property 2.17, 2.16). These requirements mirror those that we have outlined for the establishment of a public highway by prescription. First, the use must be open or notorious. This element is identical to our requirement for a public prescriptive right that the landowner have actual or implied knowledge of the public's use. *Flickinger*, 687 P.2d at 980. The landowner could not have such knowledge if the use were not open or notorious. Second, the use must continue for the prescriptive period. This requirement mirrors what we have required of the public—the use must continue for the statutory period of twenty years. *Id.* Third, in the context of a private prescriptive easement, we stated that the use must be adverse or pursuant to an attempted but ineffective grant. Again, we required adverse use just as we have for public prescriptive rights. *Id.* We have never found adverse use, in either a

public or private prescriptive rights case, and then denied the right for lack of a showing that the use was under a claim of right. In short, we have never required more of the public than a private individual to gain a prescriptive right.

The majority's desire to require an overt act on the part of public entities before a road can be established also confuses the test of adverse use with the determination of whether a route constitutes a road in the first place. As I feel that the distinction between these two issues may clarify my disagreement with the majority, I will discuss that issue next.

### III.

We have stated that an initial question in a prescriptive rights case is whether the route in question comes within the definition of a "road" so that it may be declared a public highway. *Simon*, 687 P.2d at 1302. The majority appears to combine the initial determination of whether the route in question could even be declared a "road," so as to have section 43–2–201(1)(c) apply, with the inquiry of whether a public highway was established by prescription. The majority concludes that the roadway was merely a footpath. However, the majority then argues that in order to turn a footpath into a public highway, all of the elements of prescription must be established. As I find that the statute and all of the elements of prescription do not apply unless the route in question is first determined to be a road, I disagree with the majority's analysis.

The word "road" "is a generic term and includes overland ways of every character; the scope to be given it, depending on the

---

**3.** The majority's assertion that *Flickinger* overruled *Shively* is problematic for two reasons. First, *Flickinger* quotes *Shively* approvingly. Specifically, *Flickinger* says: "A party relying on section 43–2–201(1)(c) is aided by a presumption that 'the character of the use is *adverse* where such use is shown to have been made for a prescribed period of time.'" *Flickinger*, 687 P.2d at 980 (emphasis added) (quoting *Shively*, 159 Colo. at 357, 411 P.2d at 784). More importantly, but more subtly, our traditional presumption that public use is adverse when it continues for the prescribed period (twenty years) is further evidence that we have never before required a

separate showing of a "claim of right" by a public entity. Such a "claim of right" does not fall under the presumption; the presumption only refers to adversity. *Flickinger*, 687 P.2d at 980; *Shively*, 159 Colo. at 357, 411 P.2d at 784. Yet, no case employing the presumption has gone on to examine whether there was a public claim of right. Consequently, any reference to "claim of right" as a requirement distinct from adversity necessarily arises for the first time in the majority's opinion in this case. Because this is the first instance in which we require a showing of "claim of right," it is this opinion rather than *Flickinger* that overrules *Shively*.

context in which it appears." *Id.* (quoting *Hale v. Sullivan,* 146 Colo. 512, 518, 362 P.2d 402, 405 (1961)). Thus, the context determines whether the term should have a broad or a narrow interpretation. *Id.*

In *Simon,* we considered three things in deciding whether urban footpaths that cut through a vacant lot could constitute roads and thus come under the provisions of section 43–2–201(1)(c) for a prescriptive highway. First, we looked at the intention of the legislature and decided that when the legislature adopted the statute it did not intend for eighteen-inch urban footpaths to be considered public highways. *Id.* at 1302. Second, we addressed whether there was any evidence that the city had adopted the footpaths as roads. *Id.* at 1303. Third, we discussed the public policy behind rigidly applying the statute to include such shortcuts. *Id.* at 1303–04. Applying all of these factors, we held that the footpaths in question did not come under the definition of a road so as to come under section 43–2–201(1)(c). *Id.* at 1304. Thus, we stated, we did not need to address the additional issue discussed by the court of appeals: whether the public acquired prescriptive rights. *Id.*

*Simon* therefore illustrates that the initial determination of whether a route is a road, thus implicating section 43–2–201(1)(c), is different from the question of whether or not a public highway is established under section 43–2–201(1)(c). Although we considered evidence in that case of whether the city had accepted the paths as public streets, we did so in the context of whether the road at issue fell under the definition of road so as to enable the prescription statute to apply. Furthermore, we specifically recognized that "section 43–2–201(1)(c) does not require the city to expend funds or otherwise demonstrate its willingness to accept highways established by prescription." *Id.* at 1303. We stated that such evidence would strongly indicate that a path had acquired the status of a public highway. *Id.* However, those considerations were made in the context of whether the footpaths were roads so as to cause section 43–2–201(1)(c) to apply.

In short, the preliminary question of whether a route comes under the term "road" as used in the statute governing public highway prescription resolves only whether the statute applies. That determination is separate and distinct from the question of whether the public has established a public highway by prescription. If the majority truly believes the route at issue here is not a road, it would be more appropriate for the majority to resolve the case on that issue alone as we did in *Simon,* and leave the law of public prescription unaltered.

## IV.

In sum, I disagree with the majority's requirement that in order for a public highway to be established by prescription, an official governmental entity must make some formal action which the majority calls a "claim of right." I believe that we have required only a showing of adverse use, which is synonymous with use under a claim of right. Thus, I find that the majority's requirement is wholly new to our test for prescription as it has stood for over one hundred years. Furthermore, because I also disagree with the majority's analysis of whether the route in question is a road, I believe the trial court and the court of appeals decided this case correctly. Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice MULLARKEY joins in this dissent.